2007 UT App 261

**STATE of Utah, Plaintiff and Appellee,**

v.

**Toni Lynn BIGGS, Defendant and Appellant.**

**No. 20051075–CA.**

Court of Appeals of Utah.

Aug. 2, 2007.

Linda M. Jones and Shannon N. Romero, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and J. Frederic Voros Jr., Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BENCH, P.J., GREENWOOD, Associate P.J., and ORME, J.

## OPINION

ORME, Judge:

¶ 1 Defendant Toni Lynn Biggs appeals her conviction of attempted possession of a controlled substance, a class A misdemeanor, *see* Utah Code Ann. §§ 58–37–8(2)(a)(i), (e) (2002);[1] 76–4–102(4) (2003), arguing that the district court erred in denying her motion to suppress evidence seized during a search of her vehicle. Her primary contention is that a computer check suggesting her vehicle was

not insured provided an inadequate legal basis for an investigatory stop. We affirm.

## BACKGROUND

¶ 2 On February 17, 2003, Officer Wade Sanders was patrolling the area of 2400 South and 3200 West in West Valley City when he decided to run a computer check on a vehicle he was following. Officer Sanders ran the computer check using the Insure–Rite database, which matches vehicle registration information to vehicle insurance records. The report he received indicated the vehicle was registered to Defendant but not insured. Accordingly, Officer Sanders pulled the vehicle over.

¶ 3 Officer Sanders soon learned that Tiana Tate was driving the car and that Defendant was riding as a passenger. Officer Sanders also noticed that there was damage to the steering column and ignition switch. Suspecting that the car may have been stolen, he proceeded to question Tate and Defendant about the vehicle's ownership. Although Defendant could not produce her registration paperwork, she verbally identified herself as the owner of the car, and the information she provided matched the information Officer Sanders had previously learned through the computer check. Officer Sanders was satisfied that the vehicle belonged to Defendant. Despite Officer Sanders's belief that the vehicle was not stolen, he ordered a second officer to conduct a canine search of the exterior of the car. Because the dog "indicated" while sniffing the outside of the car, the officers then had the dog enter the car for an interior search. The interior canine search revealed a purse and a backpack containing syringes, a spoon with methamphetamine residue, and three small bags containing methamphetamine. Officer Sanders then ran warrants checks on the pair. Tate was cited for possession of drug paraphernalia and released. Defendant had an outstanding warrant and was arrested and taken to jail. Defendant was later charged with one count of unlawful possession of a controlled substance, a third degree felony, *see id.* § 58–37–8(2)(a)(i), (e),

---

1. Given a number of subsequent amendments, *see* Utah Code Ann. § 58–37–8 amendment notes (Supp.2006), we refer to the statutes in effect at the time of Defendant's arrest.

and one count of unlawful possession of drug paraphernalia, a class B misdemeanor, *see id.* § 58–37a–5(1). The State later amended the information to increase the possession charge to a second degree felony offense. *See id.* § 58–37–8(2)(d)–(e).

¶ 4 After a preliminary hearing, Defendant was bound over for trial. The district court later held a hearing to consider Defendant's motion to suppress based on her contention that Officer Sanders lacked a reasonable, articulable suspicion to justify the initial traffic stop. During the course of the hearing, Insure–Rite manager Ken Stuart testified at length about the nature and use of the computer database. He testified that pursuant to statute, Insure–Rite is responsible for managing the uninsured motorist database for the State of Utah. *See id.* § 31A–22–315(1)(a) (2005) (requiring insurers to provide Insure–Rite with "a record of each motor vehicle insurance policy in effect for vehicles registered or garaged in Utah" for use in the Uninsured Motorist Identification Database Program). Further, he testified that the database "is available 24 hours a day, 7 days a week" for police officers to use during routine traffic stops.

¶ 5 Additionally, Stuart stated that all insurers are required "to report their entire full book of business" to Insure–Rite by the seventh day of each month. At that time, that data is matched with Department of Motor Vehicle records and then placed online for law enforcement use. When a police officer inputs a license plate number, the vehicle's insurance status is described by In-sure–Rite in one of three ways: "yes," there is insurance; "no," there is not insurance; or insurance is "not found."[2] Finally, Stuart testified that police officers use the database approximately 400,000 times per month and, according to four State audits, the program is over 98% accurate in detecting vehicles that are uninsured.[3]

¶ 6 At the close of the suppression hearing, the district court concluded that the computer check that showed Defendant lacked owner's insurance on the vehicle provided Officer Sanders with the necessary reasonable, articulable suspicion to justify the traffic stop. Accordingly, the district court denied the motion to suppress. Defendant subsequently pled guilty to possession of a controlled substance, a third degree felony, *see id.* § 58–37–8(2)(a)(i), (e), and to attempted possession of a controlled substance, a class A misdemeanor, *see id.* §§ 58–37–8(2)(a)(i), (e); 76–4–102(4). The plea agreement ultimately was amended to include only the attempted possession charge. Defendant reserved her right to appeal the trial court's denial of her motion to suppress with regard to the attempt charge. After sentencing, Defendant timely appealed.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Defendant raises one tenable issue on appeal.[4] Defendant argues that Officer Sanders did not have a reasonable, articulable suspicion under the Fourth Amendment to justify the investigatory stop of her vehicle. In search and seizure cases, the

2. Both the "yes" and "no" responses are definitive. A "not found" designation, however, indicates that the motorist has not yet been uninsured for three consecutive months or that Insure–Rite has not yet sent the motorist notice that its records reflect a lack of insurance. Once a motorist has been identified as lacking insurance for three consecutive months, Insure–Rite sends a notice, to which the presumptively uninsured driver has fifteen days to respond with either proof of proper insurance or proof of an exemption. If no response is received, a second notice is sent. If the second notice goes unanswered, a report is sent to the Department of Motor Vehicles, and Insure–Rite then classifies the insurance status as "no."

3. Officer Sanders also testified that of the 200 stops he has made due to a "no" or "not found"

insurance status, approximately 98% of the drivers actually did not have proof of insurance or admitted they did not have insurance.

4. Defendant also argues that once Officer Sanders confirmed ownership of her vehicle, the subsequent canine search was unconstitutional because it exceeded the scope and duration of the original stop's purpose. But Defendant's trial counsel did not argue-either in her motion and memorandum on the motion to suppress, or at oral argument on the same motion-that the canine search violated Defendant's Fourth Amendment rights. Because Defendant did not preserve this issue below, we will not consider it for the first time on appeal. *See State v. Dean*, 2004 UT 63, ¶ 13, 95 P.3d 276.

district court's factual findings are upheld unless they are clearly erroneous, while the application of the law to the underlying facts is reviewed for correctness. *See State v. Brake*, 2004 UT 95, ¶ 15, 103 P.3d 699.

## ANALYSIS

¶ 8 Defendant argues that Officer Sanders lacked reasonable, articulable suspicion to make the initial traffic stop of her vehicle. More specifically, Defendant contends that failure to maintain owner's insurance on her vehicle did not justify the initial stop in this case since under Utah law, an "operator's policy" is a viable alternative form of insurance for the driver of an otherwise uninsured vehicle, and the computer check did not identify whether Tate, the driver of Defendant's car, had an operator's policy.

■ ¶ 9 "The Fourth Amendment of the United States Constitution guarantees the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' " *State v. Lopez*, 873 P.2d 1127, 1131 (Utah 1994) (quoting U.S. Const. amend. IV). Citizens do not surrender the protections of the Fourth Amendment simply because they are in an automobile. *See id*. In fact, " 'stopping an automobile and detaining its occupants constitute[s] a seizure' within the meaning of the Fourth Amendment, 'even though the purpose of the stop is limited and the resulting detention quite brief.' " *Id.* (quoting *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)) (alteration in original).

¶ 10 While the Constitution does not forbid all searches and seizures, it does forbid those that are unreasonable. *See id.* "In determining whether [a] seizure [is] reasonable . . . under the fourth amendment, [we have] outlined the three constitutionally permissible levels of police stops[.]" *State v. Johnson*, 805 P.2d 761, 763 (Utah 1991). A level one encounter occurs when a police officer approaches a citizen and asks questions, but the person " 'is not detained against his will' " and remains free to leave. *Id.* (citation omitted). A level two encounter occurs when a police officer temporarily seizes an individual because the officer has a reasonable,

"articulable suspicion that the person has committed or is about to commit a crime." *Id.* (citation and internal quotation marks omitted). Finally, a level three stop occurs when a police officer has probable cause to believe that a crime has been committed and effects an arrest of the suspect. *See id.*

■ ¶ 11 A brief, investigatory stop of a vehicle constitutes a level two encounter, for which only reasonable, articulable suspicion is required. *See State v. Hansen*, 2002 UT 125, ¶¶ 35, 37, 63 P.3d 650. In making the reasonableness determination in the context of a level two seizure of an automobile, we apply a two-part test. *See Lopez*, 873 P.2d at 1131. First, "the police officer's action [must be] justified at its inception." *Id.* at 1132 (citation and internal quotation marks omitted). Second, "the resulting detention [must be] reasonably related .in scope to the circumstances that justified the interference in the first place." *Id.* at 1132 (citation and internal quotation marks omitted). As discussed in footnote 4, Defendant failed to preserve any issue regarding the constitutionality of the scope and duration of the ensuing detention. As such, we address only the first prong of the two-part test.

■ ¶ 12 Under the first prong of the test, a traffic stop is justified at its inception when "the stop is 'incident to a traffic violation committed in the officers' presence.' " *Id.* (quoting *State v. Talbot*, 792 P.2d 489, 491 (Utah Ct.App.1990)). "An observed violation, however, is not required. Stopping a vehicle may also be justified when the officer has reasonable articulable suspicion that the driver is committing a traffic offense[.]" *Id.* (citation and internal quotation marks omitted). "[A]s long as an officer suspects that the driver is violating any one of the multitude of applicable traffic . . . regulations, the police officer may legally stop the vehicle." *Id.* (citation and internal quotation marks omitted).

¶ 13 Defendant argues that because Utah insurance law authorizes a driver to operate a vehicle if she possesses an operator's policy, Officer Sanders lacked the requisite suspicion because the computer check revealed only that Defendant's vehicle was uninsured,

not whether the then-unknown driver had an operator's policy. Therefore, Defendant argues that Officer Sanders "had no basis for suspecting one way or another that [the driver] was driving without the insurance [required] by law." Defendant further reasons that because Officer Sanders did not know whether Tate, the driver, was validly insured with an operator's policy, he initiated the stop based on a "hunch" and, therefore, the traffic stop was not justified at its inception as required by the Fourth Amendment. We disagree.

### I. Statutory Arguments

¶ 14 Defendant argues at length that an individual may purchase a valid motor vehicle insurance policy as either an "owner" or an "operator," and refers to multiple sections of the Motor Vehicle Insurance Code in support of that contention. As explained below, this is only partially true. More importantly, it does not change our analysis in this case.

¶ 15 First, Defendant notes that Utah Code section 31A–22–303 allows for the issuance of an operator's policy that insures the operator "against loss from the liability ... for damages arising out of the insured's use of any motor vehicle not owned by him." Utah Code Ann. § 31A–22–303(1)(a)(ii)(B) (2005). This section, however, simply specifies what coverage a vehicle insurance policy must include in order to satisfy the Motor Vehicle Insurance Code requirements. *See id.* § 31A–22–303(1)(a). It is therefore directed to insurance companies, not vehicle owners, and in no way relieves Defendant of any other statutory obligation she has to insure her car.

¶ 16 Second, Defendant points out that an owner of a vehicle is required to maintain either "owner's *or operator's* security in effect at any time that the motor vehicle is operated ... within the state." *Id.* § 41–12a–301(2)(a) (emphasis added). Defendant apparently argues that because the statute allows *either* owner's or operator's insurance on her vehicle, she would have been lawfully insured had Tate independently had an operator's insurance policy. This argument is flawed, however, because section 41–12a–301(2)(a) specifically applies to the owner, not

the driver of a vehicle. *See id.* Furthermore, since Defendant presumably had neither owner's nor operator's insurance, she is in violation of section 41–12a–301(2)(a), regardless of Tate's insurance status. *See id.*

¶ 17 Finally, Defendant argues that even though section 41–12a–302(2)(a) makes it a class B misdemeanor for a driver to operate a motor vehicle "with the knowledge that the owner does not have owner's security," *id.* § 41–12a–302(2)(a), subsection 302(2)(b) contains an exception if the driver has *operator's* insurance. *See id.* § 41–12a–302(2)(b) ("A person that has ... owner's security on a Utah-registered motor vehicle ... that covers the *operation* ... of the motor vehicle in question is exempt from Subsection (2)," the class B misdemeanor.) (emphasis added). Again, Defendant's argument fails because the exception contained in section 41–12a–302(2)(b) specifically applies to the driver, and therefore, could only be used as a defense by Tate. *See id.* § 41–12a–302(2)(a), (b).

¶ 18 In sum, Defendant argues that these provisions allow for an operator's policy as a valid, alternative form of motor vehicle insurance. Therefore, Defendant contends, Officer Sanders lacked reasonable suspicion to stop her vehicle because the computer check could not tell him if Tate had such a policy in place. While it is true that an operator's policy can be a valid form of vehicle insurance in certain circumstances, it does not relieve Defendant of any duty she has to insure her vehicle under Utah Code section 41–12a–302(1). *See id.* §§ 41–12a–301(2)(a), –302(1). Accordingly, even if Tate did have an operator's policy-and there is no evidence in the record to suggest that she did-Defendant was still independently required to maintain an owner's insurance policy on her vehicle.

### II. Reasonable Suspicion

■ ¶ 19 The computer check revealed that Defendant most likely did not have owner's insurance on her vehicle at the time Officer Sanders initiated the traffic stop. Failure to have such insurance is a class B misdemeanor. *See* Utah Code Ann. § 41–12a–302(1) (2005) ("Any owner of a motor vehicle on which owner's or operator's securi-

ty is required ... who operates his vehicle or permits it to be operated on a highway in this state without *owner's* security being in effect is guilty of a class B misdemeanor[.]") (emphasis added). Accordingly, while it is true that the computer check could not reveal whether the driver had an operator's policy, for the reasons stated below it nonetheless provided Officer Sanders with a reasonable, articulable suspicion that Defendant, as the owner of the vehicle, had committed an offense.

¶ 20 Although a vehicle on the highway will not invariably have its owner at the wheel, such is frequently the case. Under Utah law, the owner of a vehicle is required to have owner's insurance on that vehicle, and it is a crime to drive or permit the car to be driven without it. *See id.* When Officer Sanders ran the computer check on Defendant's vehicle, it indicated—with upwards of 98% accuracy—that Defendant lacked the requisite owner's insurance. Even though Officer Sanders did not know whether Defendant was driving and even though he could not be certain, if Defendant was not the driver, whether the driver had an operator's policy, this uncertainty simply meant that he did not have probable cause to effect a level three stop and arrest—or immediately cite— Defendant, based only on what he knew at that time. He did, however, have a valid basis—i.e., a reasonable, articulable suspicion—to effect a level two stop and investigate further, with an eye toward confirming or dispelling his suspicions regarding Defendant's insurance status. *See State v. Chapman,* 921 P.2d 446, 450 (Utah 1996) (stating that "when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity[, the] officer may detain and question [the] individual") (citation and internal quotation marks omitted).

¶ 21 Accordingly, the traffic stop in this case was "justified at its inception," *State v. Lopez,* 873 P.2d 1127, 1132 (Utah 1994), because Officer Sanders had reasonable suspicion to believe that Defendant had committed an offense. In fact, he knew with near certainty—approximately a 98% probability— that Defendant's vehicle did not have the requisite insurance when the computer check indicated a lack of insurance. The Constitution does not require that an officer has absolute certainty that a crime has been committed, only that he or she has a reasonable, articulable suspicion that such may be the case. *See State v. Hansen,* 2002 UT 125, ¶ 35, 63 P.3d 650. Therefore, Officer Sanders's stop satisfied the requirements of the Fourth Amendment, and no violation of Defendant's rights occurred.

CONCLUSION

¶ 22 Defendant was required to maintain owner's insurance on her vehicle and failure to do so constitutes an offense. *See* Utah Code Ann. § 41–12a–302(1). The computer check revealed, with a high degree of accuracy, that Defendant lacked the required insurance. Further, it was reasonable for Officer Sanders to presume the driver was also the owner of the vehicle. As such, Officer Sanders had a reasonable, articulable suspicion that Defendant had committed an offense and, therefore, had a valid basis to effect a level two stop to investigate further. Accordingly, we affirm.

¶ 23 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and PAMELA T. GREENWOOD, Associate Presiding Judge.