2007 UT App 395

**Kurt Benton SNEDEKER, Petitioner and Appellant,**

v.

**Nannette ROLFE, Director, Driver License Division, Respondent and Appellee.**

No. 20070078–CA.

Court of Appeals of Utah.

Dec. 20, 2007.

Benjamin A. Hamilton, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Nancy L. Kemp, asst. atty. gen., Salt Lake City, for Appellee.

Before GREENWOOD, Associate P.J., BILLINGS and THORNE, JJ.

## OPINION

BILLINGS, Judge:

¶ 1 We review the trial court's determination that a Utah Highway Patrol Trooper can lawfully stop a vehicle after running a computerized license plate check and learning that, according to the trooper's computer database, the vehicle is uninsured. We affirm.

## BACKGROUND

¶ 2 Trooper Ryan Gurney of the Utah Highway Patrol observed a vehicle stopped at a traffic light. Defendant Kurt Snedeker was driving the vehicle. Trooper Gurney performed a computerized license plate check on the vehicle; the check indicated that the vehicle was registered to a business and was not insured. Trooper Gurney pulled over the car and asked for proof of insurance, which Defendant produced.

¶ 3 During this interaction, Trooper Gurney noticed a strong odor of alcohol and began an investigation for driving under the influence, which ultimately led to Defendant's arrest. Defendant does not dispute that he was intoxicated, nor that Trooper Gurney had probable cause to arrest him. Instead, Defendant contends that the initial stop was not supported by reasonable, articulable suspicion.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 4 Defendant challenges the trial court's conclusion that the initial stop was lawful, arguing it violated his Fourth Amendment right to be free from unreasonable searches and seizures. We review the trial court's determination of Fourth Amendment reasonableness for correctness. *See State v. Brake*, 2004 UT 95, ¶ 15, 103 P.3d 699; *see also State v. Markland*, 2005 UT 26, ¶ 8, 112 P.3d 507.

## ANALYSIS

■ ¶ 5 Utah requires that every owner or operator of a motor vehicle maintain "owner's or operator's security," Utah Code Ann. § 41–12a–302(1) (Supp.2007), such as a car insurance policy, *see id.* § 41–12a–103(9) (2005). Owners in violation of this law are subject to a class B misdemeanor. *See id.* § 41–12a–302(1). However, there is at least one exception: "A person that has in effect owner's security on a Utah-registered motor vehicle or its equivalent that covers the operation, by the person, of the motor vehicle in question is exempt from [criminal sanctions]." *Id.* § 41–12a–302(2)(b).

¶ 6 When Trooper Gurney ran a computerized check on the license plate of the vehicle Defendant was driving, the report showed that the vehicle was not insured and was owned by a business. Defendant contends that this information was inadequate to justify a stop under the Fourth Amendment because there was insufficient information as to whether the driver of the car was its owner

or if he had personal insurance. We disagree.

■ ¶ 7 It is clear that "[t]he Fourth Amendment's protections against unreasonable searches and seizures extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *Markland*, 2005 UT 26, ¶ 10 & n. 1, 112 P.3d 507.[1] However, it is settled law that a police officer may detain and question an individual when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity. In order to justify such a detention, the officer's suspicion must be supported by specific and articulable facts and rational inferences, and cannot be merely an inchoate and unparticularized suspicion or "hunch."

*Id.* (internal quotation marks omitted). The question is whether the computer check's readout was enough to arouse reasonable, articulable suspicion that the crime of driving without insurance was being committed.

¶ 8 The United States Supreme Court has explained that "[a] determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Indeed, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* at 274, 122 S.Ct. 744.

¶ 9 We agree with the trial court that Trooper Gurney had reasonable, articulable suspicion that the vehicle was uninsured when the database indicated that the vehicle was uninsured. Clearly his suspicion was "articulable" and not a hunch. It was also reasonable to conclude from the database's information that the vehicle was being driven without insurance.

¶ 10 Defendant insists that the ultimate discovery that he, as an individual, was properly insured somehow affects the lawfulness of the initial search. We disagree. We re-

---

1. On appeal, the State urges us to affirm not on Fourth Amendment grounds but rather on the alternative argument that the Fourth Amendment

does not apply in civil driver license revocation hearings. We choose not to consider this issue on appeal.

cently addressed a similar fact pattern in *State v. Biggs*, 2007 UT App 261, 167 P.3d 544. There, the defendant was charged with possession of a controlled substance and possession of drug paraphernalia after she was arrested pursuant to a traffic stop. *See id.* ¶ 1. The arresting officer pulled over the defendant's vehicle after his database showed the vehicle was not insured. *See id.* ¶¶ 2–3. The defendant was the passenger and owner of the vehicle. *See id.* The defendant argued that failing to maintain owner's insurance on her vehicle did not justify the initial stop because an operator's policy is a viable form of insurance, and the computer check did not indicate whether the driver of the vehicle was insured. *See id.* ¶ 8. The defendant in *Biggs*, like Defendant Snedeker here, argued that the officer lacked the requisite suspicion to pull over her vehicle. *See id.* ¶ 13. We disagreed:

> Although a vehicle on the highway will not invariably have its owner at the wheel, such is frequently the case. Under Utah law, the owner of a vehicle is required to have owner's insurance on that vehicle, and it is a crime to drive or permit the car to be driven without it.... [The officer] did ... have a valid basis—i.e., a reasonable, articulable suspicion—to effect a level two stop and investigate further, with an eye toward confirming or dispelling his suspicions regarding [d]efendant's insurance status.

*Id.* ¶ 20.

¶ 11 Defendant also compares his case to various cases wherein the police officer relied on flawed information to stop a person.[2] However, whether the information from the database was correct is unimportant to the analysis; the question simply is whether the officer had a reasonable, articulable suspicion that criminal activity was taking place. We conclude that Trooper Gurney did.

## CONCLUSION

¶ 12 Relying on the database information, Trooper Gurney had reasonable, articulable suspicion that the vehicle Defendant was driving was uninsured—a potential class B misdemeanor. We affirm the trial court's conclusion that Trooper Gurney made a lawful stop.

¶ 13 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and WILLIAM A. THORNE JR., Judge.

---

2. Defendant cites to *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), and *United States v. Shareef*, 100 F.3d 1491 (10th Cir.1996).