2020 UT App 64

# THE UTAH COURT OF APPEALS

WEST VALLEY CITY,
Appellee,
*v.*
FERNANDO C. TEMBLADOR-TOPETE,
Appellant.

Opinion
No. 20190279-CA
Filed April 16, 2020

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 171910479

Joseph Jardine, Attorney for Appellant

Ryan D. Robinson and Yvette Rodier Whitby,
Attorneys for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DIANA HAGEN
concurred.

POHLMAN, Judge:

¶1     Fernando C. Temblador-Topete entered a conditional guilty plea to one count of possession or use of a controlled substance, preserving his right to appeal the district court's ruling on the suppression of evidence. On appeal, he contends that the district court erred in denying his motion to suppress evidence seized after a traffic stop of his vehicle. He argues that the officer had no reasonable articulable suspicion to justify the stop. We affirm.

BACKGROUND

¶2    A police officer (Officer) received information from the Utah Criminal Justice Information System (UCJIS) that indicated the motor vehicle Temblador-Topete was driving might not be insured. Because operating a motor vehicle without insurance violates Utah law, Officer stopped the vehicle. When Officer asked whether Temblador-Topete had insurance, Temblador-Topete said, "No." Temblador-Topete handed Officer some papers, but they were not helpful in determining the vehicle's insurance coverage. Officer then asked for Temblador-Topete's driver license, but Temblador-Topete admitted that he did not have one.

¶3    Thereafter, Officer discovered that Temblador-Topete had outstanding warrants and placed him under arrest. A search incident to arrest yielded methamphetamine in Temblador-Topete's front pocket. West Valley City (the City) then brought charges against Temblador-Topete for possession or use of a controlled substance and driving without a valid driver license.

¶4    Temblador-Topete moved to suppress the evidence found incident to his arrest, arguing that the traffic stop was illegal from its inception because Officer lacked reasonable suspicion of a traffic offense.

¶5    At the hearing on the motion, Temblador-Topete elicited testimony from the president of Insure-Rite, the company that conveyed to UCJIS the information on the insurance status of Temblador-Topete's vehicle. Insure-Rite's president testified that Insure-Rite's database relies on information provided by insurance companies and the Division of Motor Vehicles (DMV), it is updated twice a month, and it "could be out of date" when cars are newly registered or insured. According to Insure-Rite's president, Insure-Rite has four possible responses to an inquiry from law enforcement on the insurance status of a vehicle: insured, not insured, the insurance company is out of service, or

no insurance found. And the information Insure-Rite conveyed to UCJIS—i.e., no insurance found—was accurate, as Insure-Rite had not received any proof of insurance for the vehicle Temblador-Topete was driving on the day of his traffic stop. Instead, Insure-Rite had proof of insurance for the vehicle days later, after it had received new registration information from the DMV. Insure-Rite's president testified that Temblador-Topete's vehicle actually had been continuously insured for at least a month before the stop and that Temblador-Topete's vehicle was, in fact, insured at the time of the stop.

¶6 Temblador-Topete also introduced records from Insure-Rite showing that Insure-Rite responded to Officer's inquiry on the vehicle with "Insurance: Registration not found." The records indicated that the vehicle was "newly registered" and had been insured since at least a month before the traffic stop, but that the "DMV registration process was not completed and submitted" until days after the stop.

¶7 The district court denied Temblador-Topete's motion to suppress. It explained that a routine traffic stop "includes traffic stops for speeding, driver license violations, registration violations, and checks for insurance and warrants." It found that Officer "received information from UCJIS that [Temblador-Topete] drove a vehicle that was not insured," in violation of Utah Code section 41-12a-301. The court stated that Officer "reasonably believed that the vehicle was uninsured." The court further stated that no evidence suggested that Officer believed he was mistaken. Thus, the court concluded that Officer "had a reasonable articulable suspicion to stop the car [Temblador-Topete] drove, based on the information he received from UCJIS."

¶8 After the denial of the motion to suppress, the City dismissed the charge for driving without a license, and Temblador-Topete entered a conditional guilty plea to possession or use of a controlled substance, a class A

misdemeanor, reserving his right to appeal the suppression ruling. Temblador-Topete now appeals.

ISSUE AND STANDARDS OF REVIEW

¶9     Temblador-Topete challenges the denial of his motion to suppress. We review the district court's decision as a mixed question of fact and law. *See State v. Martinez*, 2017 UT 43, ¶¶ 7–8, 424 P.3d 83. We disturb its factual findings "only when they are clearly erroneous," and we "afford no deference" to its "application of law to the underlying factual findings." *Id.* ¶¶ 8–9.

ANALYSIS

¶10 Temblador-Topete contends that the district court erroneously denied his motion to suppress, arguing that the traffic stop was illegal at its inception. While not challenging the court's factual findings, he claims that the UCJIS information that Officer received, which stated "Insurance: Registration not found,"[1] did not say "one way or the other" whether the vehicle was insured. Temblador-Topete asserts that because the Insure-Rite database "did not return a finding that the vehicle at issue was uninsured," and because the actual information received from Insure-Rite "is tantamount to an indication that

---

1. We recognize that Temblador-Topete's characterization of the UCJIS information relayed to Officer differs from the district court's finding that Officer received information from UCJIS that the vehicle was "not insured." Yet the City appears to accept Temblador-Topete's assertion that the UCJIS information stated "Insurance: Registration not found." Because both parties adopt this characterization of the UCJIS information, we do the same for purposes of our analysis.

Insure-Rite simply does not know the insurance status of the subject vehicle, Officer . . . lacked reasonable suspicion to pull the vehicle over." He also suggests the "Insure-Rite database is unreliable *per se* because it is updated twice per month."

¶11    Under Utah Code section 41-12a-301, motor vehicles operated on a highway, quasi-public road, or parking area within the state are required to have insurance coverage. Utah Code Ann. § 41-12a-301(2) (LexisNexis 2018) (requiring that "owner's or operator's security" be maintained on motor vehicles); *see also id.* § 41-12a-401(1)(a) (explaining that "proof of owner's or operator's security" may be provided by "a certificate of insurance"); *State v. Biggs*, 2007 UT App 261, ¶ 20, 167 P.3d 544 ("Under Utah law, the owner of a vehicle is required to have owner's insurance on that vehicle, and it is a crime to drive or permit the car to be driven without it."). Temblador-Topete disputes whether Officer had reasonable suspicion that he was in violation of this statute.

¶12    The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV.[2] "Stopping an automobile and detaining its occupants constitutes a 'seizure' within the meaning of the Fourth and Fourteenth Amendments, and requires at least a reasonable, articulable suspicion of criminal activity." *State v.*

---

2. Temblador-Topete cites the Utah Constitution once in his brief. "As a general rule, we will not engage in a state constitutional analysis unless an argument for different analyses under the state and federal constitution is briefed." *State v. Harris*, 2004 UT 103, ¶ 23, 104 P.3d 1250 (cleaned up). Because Temblador-Topete focuses his analysis on the standards under the United States Constitution and does not argue for greater protection under the Utah Constitution than is afforded by federal law, we will not engage in a separate state constitutional analysis.

*Duhaime*, 2011 UT App 209, ¶ 7, 258 P.3d 649 (cleaned up). An investigatory stop "must be justified at its inception."[3] *Id.* (cleaned up).

¶13    A routine traffic stop is justified at its inception if the stop is supported by a "reasonable articulable suspicion that the driver is committing a traffic offense." *State v. Lopez*, 873 P.2d 1127, 1132 (Utah 1994) (cleaned up). To assess whether an officer had such reasonable articulable suspicion, courts "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (cleaned up). "Reasonable suspicion requires a particularized and objective basis, supported by specific and articulable facts." *State v. Worwood*, 2007 UT 47, ¶ 23, 164 P.3d 397 (cleaned up).

¶14    "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of [a traffic violation] need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *See Arvizu*, 534 U.S. at 274 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)); *see also State v. Applegate*, 2008 UT 63, ¶ 10, 194 P.3d 925 ("[A]n officer may not initiate a stop based merely on a 'hunch' that an individual is violating the law . . . ."). Further, an officer need not "completely rule out innocent conduct prior to making the stop." *Applegate*, 2008 UT 63, ¶ 10. Thus, "as long as an officer suspects that the driver is violating any one of the multitude of applicable traffic regulations, the police officer may legally stop the vehicle." *Id.* (cleaned up). And during that stop,

---

3. "The detention following the stop must be reasonably related in scope to the circumstances that justified the interference in the first place." *State v. Duhaime*, 2011 UT App 209, ¶ 7, 258 P.3d 649 (cleaned up). Temblador-Topete does not challenge the scope of his detention.

the officer must "diligently pursue a means of investigation that is likely to confirm or dispel his suspicions quickly." *State v. Morris*, 2011 UT 40, ¶ 29, 259 P.3d 116 (cleaned up).

¶15 In this case, the district court correctly concluded that Officer had a reasonable articulable suspicion that Temblador-Topete was driving a car without insurance. Officer received objective and particularized information from Insure-Rite (via UCJIS) that insurance on Temblador-Topete's vehicle was "not found." And this information reasonably raised a doubt about whether the vehicle was insured, as required by Utah law. We agree with the City that because UCJIS could not confirm that Temblador-Topete's vehicle had the required insurance coverage, it thereby created "a reasonable suspicion that the vehicle [was] *not* covered." Having received the UCJIS information, Officer was not "merely viewing [Temblador-Topete's vehicle] through his windshield, wondering about its insurance status as he might any other passing vehicle"; instead, he had an objective and particularized reason "to pluck this needle from the haystack of cars on the road for investigation of a possible insurance violation." *See United States v. Cortez-Galaviz*, 495 F.3d 1203, 1206 (10th Cir. 2007) (cleaned up). Officer therefore was justified in temporarily stopping the vehicle in order to promptly confirm or dispel that suspicion.

¶16 Temblador-Topete maintains that the UCJIS information did not indicate "one way or the other" whether the vehicle was insured and that Officer therefore had a "[l]ack of knowledge" as to whether a traffic offense was being committed. But Temblador-Topete is simply incorrect that lack of conclusive knowledge that a traffic offense occurred "necessarily precludes a finding of reasonable suspicion in relation thereto." Under well-established law, "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent

conduct."[4] *Arvizu*, 534 U.S. at 277. In other words, Officer was not required to eliminate the possibility that Temblador-Topete's vehicle was insured before he could effectuate an investigatory stop. *See id.*

¶17 Moreover, the likelihood that the vehicle was not insured could "fall[] considerably short of satisfying a preponderance of the evidence standard" and still constitute reasonable articulable suspicion. *See id.* at 274. Because the UCJIS information indicated that the insurance status on Temblador-Topete's vehicle was unknown, it reasonably called into question whether the vehicle was properly insured. This uncertainty meant that Officer "did not have probable cause" to arrest or immediately cite Temblador-Topete, yet it did provide "a valid basis—i.e., a reasonable, articulable suspicion—to effect [an investigatory] stop" to confirm or dispel that suspicion. *See Biggs*, 2007 UT App 261, ¶¶ 20–21; *see also Cortez-Galaviz*, 495 F.3d at 1206 (explaining that the "suggestive ambiguity" of a "not found" response from Insure-Rite warranted "a brief traffic stop—even though it surely would not have sufficed for an arrest").[5]

---

4. "This is because the public interest in investigating criminal activity is sufficiently important to justify the minimal intrusion into personal security that such investigatory detentions entail." *State v. Markland*, 2005 UT 26, ¶ 17, 112 P.3d 507.

5. Other courts have reached the same conclusion on similar facts. *See, e.g.*, *United States v. Broca-Martinez*, 855 F.3d 675, 680 (5th Cir. 2017) ("A state computer database indication of insurance status may establish reasonable suspicion when the officer is familiar with the database and the system itself is reliable. If that is the case, a seemingly inconclusive report such as 'unconfirmed' will be a specific and articulable fact that supports a traffic stop."); *State v. Yazzie*, 2016-NMSC-026, ¶¶ 30, 35–36, 376 P.3d 858 ("It was objectively reasonable for [the police

(continued…)

¶18 Temblador-Topete further insists that the stop was unjustified because the Insure-Rite database is "unreliable *per se*," given that "it is updated twice per month" and that it is "possible that the database is out-of-date for up to two weeks on new insurance registrations." Temblador-Topete has not provided any legal authority for this argument. The authority we have located, however, suggests that two-week-old information is not sufficiently stale to render a database per se unreliable.

¶19 For example, the United States Court of Appeals for the Tenth Circuit rejected a similar argument in *United States v. Cortez-Galaviz*, 495 F.3d 1203 (10th Cir. 2007). There, a Utah driver, much like Temblador-Topete, challenged the lawfulness of a traffic stop based on information from Insure-Rite that insurance was "not found" on his vehicle. *Id.* at 1204–05. The driver claimed that Insure-Rite's database could not reasonably be relied on for carrying out a traffic stop due to the fact that Insure-Rite's information was twenty days old. *Id.* at 1209. The court acknowledged "that timeliness of information is but one of many factors in the mix when assessing whether reasonable suspicion for an investigatory detention exists, and the relative importance of timeliness in that mix depends on the nature of the criminal activity at issue." *Id.* The court elaborated,

> [W]hen the legal infraction at issue typically wears on for days or weeks or months (like, say, driving without a license or appropriate emissions and safety certifications), rather than concludes quickly (like, say, jaywalking or mugging), the timeliness

---

(…continued)
officer] to suspect [the defendant] was operating an uninsured vehicle in violation of the law when the database indicated the compliance status was unknown to [the motor vehicle division].").

> of the information on which the government relies to effect an investigative detention recedes in importance compared to other factors, such as the type and duration of [the] offense at issue.

*Id.* (cleaned up). The court further explained that the traffic stop was aimed at investigating a non-transitory violation of Utah's vehicle insurance laws. *Id.* Significantly, the patrolling officer "relied on the most current information available," and the driver did not provide any other evidence or argument to suggest that reliance on twenty-day-old information was "unreasonable given the nature of available technology, the offense or detention at issue, or the practical challenges associated with coordinating the dissemination of registration and insurance information for every motor vehicle on the road." *Id.*

¶20 The *Cortez-Galaviz* court held that twenty-day-old information "does not, by and of itself, nullify a traffic stop on the basis of a 'not found' insurance report." *Id.* In so doing, the court observed that other jurisdictions had reached similar conclusions. *Id.* at 1209–10 & n.5 (collecting cases); *see also People v. Mazzie*, 926 N.W.2d 359, 367 (Mich. Ct. App. 2018) (collecting cases and noting that "there are persuasive decisions from our sister states and the federal judiciary that uniformly conclude that the vehicle-related information older than two weeks is a proper basis to establish reasonable suspicion to pull over a vehicle"). The court also observed that while "outer boundaries exist for the usefulness of data, even for offenses typically protracted and ongoing in nature," resolving what that outer boundary may be was unnecessary given the record in the case. *Cortez-Galaviz*, 495 F.3d at 1210.

¶21 *Cortez-Galaviz*'s reasoning is persuasive. And like the driver in *Cortez-Galaviz*, Temblador-Topete has provided insufficient argument and evidence to show that Insure-Rite's database cannot be reasonably relied on. Without more, the fact

that Insure-Rite's database could be out of date by up to two weeks does not render the database per se unreliable.

## CONCLUSION

¶22 Officer had a reasonable articulable suspicion that Temblador-Topete's vehicle lacked insurance, and we therefore conclude that the traffic stop was justified at its inception. Accordingly, we affirm the district court's denial of Temblador-Topete's motion to suppress.

———————