2008 UT 63

**STATE of Utah, Plaintiff and Appellee,**

v.

**Lorinda Lue APPLEGATE, Defendant and Appellant.**

**No. 20070507.**

Supreme Court of Utah.

Sept. 9, 2008.

shaking. Officer Hansen asked if she was taking any medication, to which Applegate responded that she had recently taken a Vicodin. Based on that information, Officer Hansen did a series of field sobriety tests, which Applegate failed. Accordingly, Officer Hansen arrested her for DUI; she later tested positive for methamphetamine. A search incident to the arrest resulted in the discovery of marijuana.

¶ 4 In January 2007, Applegate moved to suppress the evidence seized during the traffic stop, which the district court denied. Applegate subsequently pled guilty to possession of methamphetamine in a drug-free zone, a second degree felony; driving under the influence with two prior offenses within ten years, a third degree felony; and possession of marijuana in a drug-free zone, a class A misdemeanor. Applegate reserved her right to appeal the denial of the motion to suppress. In June 2007, Applegate filed a notice of appeal with the Utah Court of Appeals, and the case was certified for immediate transfer to this court.

Mark L. Shurtleff, Att'y Gen., Kris C. Leonard, Marian Decker, Asst. Att'ys Gen., Salt Lake City, for plaintiff.

William L. Schultz, Moab, for defendant.

WILKINS, Justice:

¶ 1 We have been asked to determine whether the district court erred in denying Lorinda Lue Applegate's motion to suppress evidence discovered during a traffic stop. We affirm.

## BACKGROUND

¶ 2 In October 2006, Officer Shaun Hansen spotted Lorinda Lue Applegate in Moab, Utah, driving a vehicle with Colorado license plates. Officer Hansen had seen Applegate driving this particular vehicle exclusively for five months and believed that Applegate was the owner. Officer Hansen also believed that because Applegate worked and lived in Utah, Utah law required her to have the vehicle properly registered within the state. Accordingly, he stopped her for a suspected registration violation.

¶ 3 When Officer Hansen pulled Applegate's vehicle over, he observed that Applegate's speech was "thick" and that she was

## STANDARD OF REVIEW

 ¶ 5 We review for clear error the factual findings underlying a district court's decision to deny a motion to suppress. *State v. Krukowski*, 2004 UT 94, ¶ 15, 100 P.3d 1222. Whether the district court correctly denied the motion to suppress, however, is a legal conclusion that we review for correctness. *State v. Brake*, 2004 UT 95, ¶ 15, 103 P.3d 699.

## ANALYSIS

¶ 6 Applegate argues that the stop of her vehicle was not supported by reasonable suspicion. She first claims that Officer Hansen could not have reasonably suspected she was the owner of the vehicle. Second, she contends that Officer Hansen misunderstood Utah's vehicle registration laws and therefore "ha[d] no basis upon which to make or defend the stop" as announced by *State v. Friesen*, 1999 UT App 262, ¶ 14, 988 P.2d 7. We address each of these arguments in turn.

## I. OFFICER HANSEN'S SUSPICION ABOUT THE OWNERSHIP OF THE VEHICLE

¶ 7 "The Fourth Amendment to the United States Constitution protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *State v. Friesen*, 1999 UT App 262, ¶ 12, 988 P.2d 7 (alteration in original) (quoting U.S. Const. amend. IV). "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular government invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Accordingly, although the Fourth Amendment does not protect against all searches and seizures, it does protect against unreasonable searches and seizures. *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). Moreover,

> [c]itizens do not surrender the protections of the Fourth Amendment simply because they are in an automobile. In fact, "stopping an automobile and detaining its occupants constitute[s] a seizure within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief."

*State v. Biggs*, 2007 UT App 261, ¶ 9, 167 P.3d 544 (quoting *State v. Lopez*, 873 P.2d 1127, 1131 (Utah 1994)) (second alteration in original) (internal citation omitted).

¶ 8 In determining the reasonableness of a search and seizure under the Fourth Amendment, "three constitutionally permissible levels of police stops" have been outlined. *State v. Johnson*, 805 P.2d 761, 763 (Utah 1991).

> A level one encounter occurs when a police officer approaches a citizen and asks questions, but the person is not detained against his will and remains free to leave. A level two encounter occurs when a police officer temporarily seizes an individual because the officer has a reasonable, articulable suspicion that the person has committed or is about to commit a crime. Finally, a level three stop occurs when a police

officer has probable cause to believe that a crime has been committed and effects an arrest of the suspect.

*Biggs*, 2007 UT App 261, ¶ 10, 167 P.3d 544 (internal citations and quotation marks omitted).

¶ 9 "A brief, investigatory stop of a vehicle constitutes a level two encounter, for which only reasonable, articulable suspicion is required." *Id.; see also State v. Hansen*, 2002 UT 125, ¶¶ 35, 37, 63 P.3d 650. To determine whether a level two stop is reasonable, we apply a two-part test. *See State v. Lopez*, 873 P.2d 1127, 1131 (Utah 1994). The first step is to determine whether "the police officer's action [was] justified at its inception." *Id.* at 1131–32 (internal quotation marks omitted). Under the second step, we must determine whether the detention following the stop was "reasonably related in scope to the circumstances that justified the interference in the first place." *Id.* at 1132. Because Applegate does not challenge the scope of the detention following the initial stop, we only address the first prong of the test.

¶ 10 Under the first prong, a routine traffic stop is justified at the inception "if the stop is incident to a traffic violation committed in the officers' presence." *Id.* (internal quotation marks omitted). A police officer need not actually observe a violation. Instead, "as long as an officer suspects that the driver is violating any one of the multitude of applicable traffic ... regulations, the police officer may legally stop the vehicle." *Id.* (internal quotation marks omitted). Accordingly, while an officer may not initiate a stop based merely on a "hunch" that an individual is violating the law, he also does not have to completely rule out innocent conduct prior to making the stop. *See State v. Markland*, 2005 UT 26, ¶ 17, 112 P.3d 507.

¶ 11 In this case, Applegate argues that it was unreasonable for Officer Hansen to suspect that she was the owner of the vehicle. Moreover, she argues that because she was not the owner of the vehicle—and therefore not required to have the vehicle registered in Utah—Officer Hansen lacked reasonable suspicion that she was in violation

of the traffic laws, thus rendering the stop improper. In other words, because she was not in violation of the traffic laws at the time Officer Hansen initiated the stop, it was per se unreasonable. We disagree.

¶ 12 As it turned out, it is true that Applegate was not in violation of the traffic laws at the time Officer Hansen stopped her vehicle. Officer Hansen was not required, however, to rule out innocent conduct prior to the stop. Instead, he was only required to reasonably *suspect* that Applegate was "violating any one of the multitude of applicable traffic ... regulations." *Lopez*, 873 P.2d at 1132. Officer Hansen suspected that Applegate was violating the traffic laws because (1) he observed Applegate—and only Applegate—driving the vehicle for several months prior to the stop; (2) he observed that the plates on the car were from Colorado but knew that Applegate worked and resided in Moab; and (3) he believed—correctly—that an individual who works and resides in Utah has an obligation to register their vehicle in the state within sixty days of their arrival. While there are rare circumstances to the contrary, it was reasonable for Officer Hansen to assume that as the only driver of the vehicle, Applegate was also the owner of the vehicle and was therefore required to properly register it. Indeed, "the facts available to [Officer Hansen] at the moment of the [traffic stop] warrant[ed] a man of reasonable caution in the belief that the action taken was appropriate." *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (internal quotation marks omitted). Accordingly, we conclude that the district court correctly denied Applegate's motion to suppress.

## II. OFFICER HANSEN'S KNOWLEDGE OF THE LAW

¶ 13 Applegate also contends that the traffic stop was unreasonable because Officer Hansen misunderstood Utah's motor vehicle registration laws and, therefore, he "ha[d] no basis upon which to make or defend the stop" as announced in *State v. Friesen*, 1999 UT App 262, ¶ 14, 988 P.2d 7. The State, on the other hand, contends that *Friesen* should be overruled because it directly conflicts with controlling Fourth Amendment law as announced in *Devenpeck v. Alford*, 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). Specifically, the State argues that *"Devenpeck* makes clear that the controlling Fourth Amendment question is not whether an officer has the correct law in mind at the time he acts, but whether the available facts *objectively* show that there was some ground to believe the law was violated."

¶ 14 We decline the State's invitation to overrule *Friesen*. We also conclude that Officer Hansen's understanding of the motor vehicle registration laws did not render the traffic stop unreasonable. We now address each of these points in turn.

### A. State v. Friesen Need Not Be Overruled

¶ 15 The parties differ significantly on *Friesen's* application in this case. In *Friesen*, a Utah police officer stopped a vehicle bearing only a rear Wyoming license plate. 1999 UT App 262, ¶ 2, 988 P.2d 7. The police officer initiated the stop based on the erroneous assumption that Wyoming law required both a front and a rear license plate. *Id.* ¶ 3. On appeal, the State argued that "reasonable, articulable suspicion" encompasses a police officer's understanding of what the law is. Responding *specifically* to that argument, the court of appeals held that "the facts about which an officer must have a reasonable[,] articulable suspicion at the time of a traffic stop are those regarding the conduct of the person stopped, not the nature of the law." *Id.* 14. The *Friesen* court ultimately concluded that if the police officer's suspicion is about what the law prohibits, "the officer has no basis upon which to make or defend the stop." *Id.* In this context, it is clear that the court of appeals simply meant to clarify that reasonable, articulable suspicion relates to an individual's conduct, not a police officer's understanding of the law. Any reading of *Friesen* to the contrary is therefore disavowed.

¶ 16 In *Devenpeck v. Alford*—notably, a civil case—police officers stopped a vehicle specifically because they had probable cause to arrest the driver for impersonating an officer. 543 U.S. at 149, 125 S.Ct. 588.

When the police officers approached the vehicle, however, they informed the defendant that he was being arrested for a different crime—violating the state's privacy laws. *Id.* On appeal, the Ninth Circuit concluded that the offense establishing probable cause must be "closely related"—and based on the same conduct—to the offense identified by the police officers at the time of the arrest. *Id.* at 152, 125 S.Ct. 588. The Supreme Court rejected this argument, holding that the "[s]ubjective intent of the arresting officer . . . is simply no basis for invalidating an arrest. Those are lawfully arrested *whom the facts known to the arresting officers* give probable cause to arrest." *Id.* at 154–55, 125 S.Ct. 588 (emphasis added).

¶ 17 *Friesen* is to be read as consistent with *Devenpeck.* Both cases stand for the proposition that a police officer's subjective intent and thoughts are irrelevant to the reasonable suspicion inquiry, as well as an improper basis for invalidating an arrest. *See Devenpeck*, 543 U.S. at 154–55, 125 S.Ct. 588; *Friesen*, 1999 UT App 262, ¶ 12, 988 P.2d 7. Moreover, both cases emphasize that whether reasonable suspicion exists should be based upon the facts known to the police officer at the time of the arrest. Finally, both cases emphasize that reasonable, articulable suspicion must be supported by what the law actually is, not what the officer subjectively thought the law was. In other words, if the defendant's conduct gives the officer reasonable, articulable suspicion, " 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action as long as the circumstances, viewed objectively, justify that action.' " *Devenpeck*, 543 U.S. at 153, 125 S.Ct. 588 (quoting *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)) (internal quotation marks omitted).

### B. Officer Hansen's Understanding of the Law Did Not Render the Traffic Stop Unreasonable

¶ 18 Applegate argues that because Officer Hansen misunderstood the motor vehicle registration laws, he lacked the reasonable suspicion necessary to initiate the traffic stop. At the hearing on the motion to suppress, Officer Hansen's testimony regarding his understanding of Utah's motor vehicle registration laws was threefold: First, he testified that if a vehicle had been in Utah for six months, it must be registered in Utah. This is an erroneous statement of Utah law. Second, he testified that if Applegate was the primary driver of the vehicle, it would have to be registered in Utah from the first day the vehicle entered the state. This, too, is incorrect. Finally, he testified that Applegate's vehicle had to be registered in Utah because Applegate lived and worked in Utah. This understanding of Utah law is correct. *See* Utah Code Ann. § 41–1a–202(3) (Supp. 2007). The district court accepted Officer Hansen's testimony, specifically finding that he had not relied on the erroneous six-month rule when he stopped Applegate's vehicle. Instead, the district court found that "[h]e relied on his belief that residents of Utah who purchase vehicles must register those vehicles in Utah . . . within 60 days of establishing residence here."

¶ 19 We conclude that "[t]his determination was clearly within the legitimate exercise of the [district] court's discretion." *State v. Friesen*, 1999 UT App 262, ¶ 10, 988 P.2d 7. Moreover, this factual finding was not properly challenged by Applegate, nor is it clearly erroneous. Accordingly, this court is bound by the district court's finding and must accept it as true. *See Bruner v. Carver*, 920 P.2d 1153, 1158 (Utah 1996). Accepting his testimony, the district court determined that Officer Hansen did not rely on the misunderstood portion of the law when he stopped Applegate's car for a suspected registration violation. Instead, he stopped her based on an accurate understanding of the law, i.e., when individuals have resided in Utah for sixty days, they are required to register their vehicle in the state in accordance with Utah Code section 41–1a–202(3).

### CONCLUSION

¶ 20 Officer Hansen had a reasonable, articulable suspicion that Applegate was violating the traffic laws when he observed her driving a vehicle exclusively for several

months without proper Utah registration. Moreover, the district court found—and Applegate did not challenge on appeal—that Officer Hansen based the traffic stop on a correct understanding of the motor vehicle registration laws. In any event, Officer Hansen's subjective understanding of the law is irrelevant. Instead, all that matters is that he was able "to point to specific and articulable facts regarding [Applegate's] conduct which, taken together with rational inferences, created a reasonable suspicion of" a violation of the traffic laws. *State v. Friesen*, 1999 UT App 262, ¶ 17, 988 P.2d 7. Accordingly, we conclude that the district court correctly denied Applegate's motion to suppress.

¶ 21 Affirmed.

¶ 22 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Judge HANSEN concur in Justice Wilkins' opinion.

¶ 23 Justice NEHRING does not participate herein; District Judge ROYAL I. HANSEN sat.