IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100492-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (January 26, 2012) |
| Ramon A. Juma, | ) | |
| | ) | 2012 UT App 27 |
| Defendant and Appellant. | ) | |

-----

Sixth District, Richfield Department, 091600075
The Honorable Wallace A. Lee

Attorneys:      Edward D. Flint, Jonathon W. Grimes, and Sean P. Hullinger, Salt Lake
City, for Appellant
Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee

-----

Before Judges Orme, Thorne, and Roth.

ROTH, Judge:

¶1      Defendant Ramon A. Juma appeals his conditional guilty plea to possession of a controlled substance with intent to distribute, a third degree felony, *see* Utah Code Ann. § 58-37-8(1)(a)(iii), (b)(ii) (Supp. 2011),[1] arguing that the district court erred in denying his motion to suppress evidence seized during the course of a traffic stop. *See generally State v. Applegate*, 2008 UT 63, ¶ 5, 194 P.3d 925 ("Whether the district court correctly

_____

      [1]Because any relevant amendments to the statutory provisions at issue are not substantive, we cite to the current version of the code as a convenience to the reader.

denied [a] motion to suppress . . . is a legal conclusion that we review for correctness."). We affirm.

¶2    Juma first argues that the traffic stop that led to the discovery of thirty-three pounds of marijuana in the trunk of his rental car was not justified from its inception because the detaining officer did not have reasonable, articulable suspicion that a traffic violation had been committed. *See generally id.* ¶¶ 8-9 (explaining that "[a] brief, investigatory stop of a vehicle" requires "reasonable, articulable suspicion that the [driver] has committed . . . a crime" and that the officer's action in stopping the vehicle must be "justified at its inception"); *id.* ¶ 10 (explaining that "a routine traffic stop is justified at its inception if the stop is incident to a traffic violation committed in the officer['s] presence" (internal quotation marks omitted)).

¶3    The officer stopped the car in which Juma was traveling because, on approaching Utah Department of Transportation (UDOT) maintenance trucks that were stopped at the side of the highway, the driver failed to "reduce the speed of the [car]" and did not "make a lane change into a lane not adjacent to" the trucks. *See* Utah Code Ann. § 41-6a-904(2) (Supp. 2011). However, the requirements that a driver "reduce the speed of the [car]" and "make a lane change" only apply to "authorized emergency vehicle[s]" with "flashing red, red and white, or red and blue lights," *see id.*, and the UDOT maintenance trucks were instead "highway maintenance vehicle[s] that [were] displaying flashing amber lights," *see id.* § 41-6a-904(3). Juma thus asserts--and the State does not disagree--that the officer's incorrect understanding of the law cannot provide a valid legal basis for the traffic stop because the legal basis for a traffic stop "must be supported by what the law actually is, not what the officer subjectively thought the law was." *See Applegate*, 2008 UT 63, ¶¶ 15, 17; *see also Devenpeck v. Alford*, 543 U.S. 146, 149-51 (2004) (explaining that the respondent's purported violation of the Washington Privacy Act was not a valid legal basis for his arrest because at the time of the arrest it "had [been] clearly established that respondent's taping of petitioner[ police officers] was not a crime"); *Applegate*, 2008 UT 63, ¶¶ 12, 18-19 (explaining that an officer's incorrect understanding of Utah's motor vehicle registration laws could not be a valid legal basis for a traffic stop); *State v. Friesen*, 1999 UT App 262, ¶¶ 12-16, 988 P.2d 7 (explaining that an officer's suspicion that Wyoming law requires display of a front license plate was not a legitimate legal basis for a traffic stop because "the facts about which an officer must have a reasonable articulable suspicion at the time of a traffic stop are those regarding the conduct of the person stopped, not the nature of the law"). The State, however, contends that even though the stop was based on an incorrect

understanding of the law, so long as the officer observed conduct that objectively established reasonable, articulable suspicion that the driver of the car in which Juma was traveling committed an actual traffic violation, the traffic stop was justified at its inception. We agree.

¶4 "[A] police officer's subjective intent and thoughts are irrelevant to the reasonable suspicion inquiry, as well as an improper basis for invalidating" a traffic stop. *See generally Applegate*, 2008 UT 63, ¶ 17. Rather, "whether reasonable suspicion exists [is] based upon the facts known to the police officer at the time of the" stop. *Id.* Thus,

> if the [suspect]'s conduct gives the officer reasonable, articulable suspicion, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action as long as the circumstances, viewed objectively, justify that action."

*Id.* (quoting *Devenpeck*, 543 U.S. at 153). An officer's subjective state of mind--except for the facts known to him or her--is irrelevant to the existence of reasonable, articulable suspicion; indeed, the officer's subjective legal basis for a traffic stop need not be the offense for which the known facts actually establish reasonable, articulable suspicion. *Cf. Devenpeck*, 543 U.S. at 153 ("[O]ur cases make it clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, [the officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." (citations omitted)).

¶5 The district court found that when the driver of the car in which Juma was traveling passed the UDOT maintenance trucks, she "did not slow down," "remained in the right . . . lane" although the "left . . . lane was unoccupied," and did not "move over in [her] lane or even crowd the center line," creating a "dangerous condition" for the UDOT workers. Relying on these findings, the district court concluded that although the officer's subjective legal basis for stopping the car in which Juma was traveling was based on his incorrect belief that the requirements for passing a stationary emergency vehicle are the same for passing a stationary highway maintenance vehicle, *compare* Utah Code Ann. § 41-6a-904(2), *with id.* § 41-6a-904(3), the driver's conduct that the

officer witnessed nonetheless established reasonable, articulable suspicion that the driver failed to "reduce the speed of the [car] and provide as much space as practical" when "approaching a stationary . . . highway maintenance vehicle that is displaying flashing amber lights," *see* Utah Code Ann. § 41-6a-904(3). Because the officer witnessed conduct that objectively established reasonable, articulable suspicion that the driver committed a traffic offense, even though a different offense than he thought, the district court determined that the traffic stop was justified at its inception. *See, e.g., Devenpeck*, 543 U.S. at 149-51, 153-56 (reasoning that although the respondent's conduct did not violate the Washington Privacy Act, which could, accordingly, not be the legal basis for his arrest, facts observed by the arresting officers could potentially establish probable cause that the respondent had committed a different crime of impersonating an officer); *Applegate*, 2008 UT 63, ¶¶ 13, 18-20 (reasoning that although an officer's misunderstanding of Utah's motor vehicle registration laws could not provide a legal basis for a traffic stop, facts observed by the officer established reasonable, articulable suspicion that an actual traffic violation had occurred).

¶6     Juma has not challenged the district court's factual findings that the driver did not slow down and move over for the UDOT maintenance trucks, thereby creating "an unsafe condition." *See generally State v. Applegate*, 2008 UT 63, ¶ 5, 194 P.3d 925 ("We review for clear error the factual findings underlying a district court's decision to deny a motion to suppress."). We are therefore bound by those factual findings in our review of this matter. *See generally id.* ¶ 19 (explaining that the "court is bound by the district court's [factual] finding" that "was not properly challenged . . . nor . . . clearly erroneous"). And the district court's unchallenged factual findings are sufficient to support its conclusion that the officer had reasonable, articulable suspicion that the driver had committed an actual traffic violation by failing to "reduce . . . speed" and "provide as much space as practical" for the UDOT maintenance trucks. Accordingly, the traffic stop was justified at its inception.

¶7     Juma next argues that the officer detained him longer than necessary to effectuate the purpose of the initial traffic stop. *See generally id.* ¶ 9 (explaining that for a "brief, investigatory stop of a vehicle" to be valid "the detention following the stop [must be] reasonably related in scope to the circumstances that justified the interference in the first place" (internal quotation marks omitted)); *State v. Baker*, 2010 UT 18, ¶ 17, 229 P.3d 650 ("Once a traffic stop is made, the detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." (internal quotation marks omitted)). During the course of the traffic stop the officer gathered additional

facts that, due to his training and experience, led him to suspect that Juma and the driver of the car were drug traffickers. After issuing a warning citation and returning identification and other paperwork to Juma and the driver, the officer deployed his certified drug-detection canine, who was present in the officer's patrol car. Upon walking around Juma's car, the drug-detection canine "aggressively indicated the presence of drugs by barking and scratching on the rear passenger door." *See generally Baker*, 2010 UT 18, ¶ 29 (explaining that "a dog sniff is not a search under the Fourth Amendment" and "a drug-trained dog may walk the perimeter of a lawfully detained vehicle even if police have no reasonable suspicion that the vehicle occupants are engaged in drug-related activity so long as the dog sniff search does not extend the duration of the stop").

¶8    Juma does not address whether the totality of the facts gathered by the officer during the course of the traffic stop established additional reasonable, articulable suspicion of further illegal activity so as to justify the brief continued detention that resulted from deployment of the drug-detection canine.[2] Rather, he argues that if the officer "had some new or heightened suspicion regarding" further illegal activity, "he would not have . . . conclud[ed] . . . the stop" by issuing a warning citation and returning identification and paperwork. Indeed, the State "agrees that, when the [officer] issued a warning citation, the original purpose of the traffic stop was completed and the [officer] could not further detain [Juma and the driver] *on that basis*." (Emphasis added.) However, given that during the course of the traffic stop the officer developed the additional reasonable suspicion that Juma and the driver might be transporting drugs, he therefore had a lawful basis to temporarily continue to detain them to investigate that further illegality, even though the original basis for the stop had run its course. *See generally id.* ¶ 13 ("If, during the scope of [a] traffic stop, the officer forms new reasonable articulable suspicion of criminal activity, the officer may also expediently investigate his new suspicion."); *State v. Hansen*, 2002 UT 125, ¶ 31, 63 P.3d 650 ("Any further temporary detention for investigative questioning after [fulfilling] the

---

[2]The district court concluded that the officer's "articulated facts [were] sufficient to establish reasonable suspicion in the totality of the circumstances." Because the district court's factual findings and resulting conclusion are unchallenged, we accept them for purposes of appeal. *See generally State v. Applegate*, 2008 UT 63, ¶ 19, 194 P.3d 925 (explaining that the "court is bound by the district court's [factual] finding" that "was not properly challenged . . . nor . . . clearly erroneous").

purpose for the initial traffic stop constitutes an illegal seizure, unless an officer has probable cause or a reasonable suspicion of a further illegality." (alteration in original) (internal quotation marks omitted)). Accordingly, because the officer had additional reasonable suspicion of further illegal activity he could temporarily detain Juma and the driver to investigate his suspicions by deploying his drug-detection canine.

¶9 Finally, Juma argues that there were no exigent circumstances justifying the warrantless search of his car that occurred after the officer's drug-detection canine indicated the presence of drugs, thus making the search illegal. *See generally State v. Despain*, 2007 UT App 367, ¶ 13, 173 P.3d 213 (explaining that, generally, "law enforcement officers must obtain a warrant before conducting a search"). "However, the automobile exception to the warrant requirement provides that [i]f a car is readily mobile and probable cause exists to believe it contains contraband, . . . [it is] permi[ssible for] police to search the vehicle without" a warrant. *See id.* (first alteration in original) (internal quotation marks omitted). Thus, having probable cause that drugs were in Juma's car, *see generally United States v. Kitchell*, 653 F.3d 1206, 1223 (10th Cir. 2011) ("[I]t is well-established that a dog sniff provides the requisite probable cause to search a vehicle for drugs." (internal quotation marks omitted)), *cert. denied* 132 S. Ct. 435 (2011), the officer was not required to obtain a warrant before searching it.

¶10 Accordingly, we affirm.


_____
Stephen L. Roth, Judge


-----


¶11 WE CONCUR:


_____
Gregory K. Orme, Judge



_____
William A. Thorne Jr., Judge