**2017 UT App 207**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ALLEN MILES JERVIS,
Appellant.

Opinion
No. 20150999-CA
Filed November 16, 2017

Third District Court, Salt Lake Department
The Honorable Keith A. Kelly
No. 151900605

Joan C. Watt, Brenda M. Viera, and Diana K. Pierson,
Attorneys for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
KATE A. TOOMEY and RYAN M. HARRIS concurred.

POHLMAN, Judge:

¶1     Allen Miles Jervis appeals his conviction for one count of possession of a controlled substance, a third degree felony, contending that the district court incorrectly concluded that his seizure by a police officer was constitutionally permissible. We affirm.

BACKGROUND[1]

¶2    Early one afternoon, a Salt Lake City police officer (Officer) was patrolling "several motel parking lots" where he claimed there was often "a lot of criminal activity." One of the motels was located "just off the freeway," accessible from public streets, and surrounded on the north, east, and west by adjacent parking lots. As Officer drove through the motel's north lot, he noticed a lone, parked vehicle backed into the parking stall "furthest away from the [motel's] available rooms." The vehicle was a Honda Civic, a make and model that, based on his experience, Officer knew to be "a frequently stolen car." Officer observed Jervis sitting alone in the driver's seat. He also observed that there was "no front license plate" on the vehicle, and that "there were oversized bolts in the front bumper, where the plate would normally be attached," causing Officer to wonder whether "the front plate had just been ripped off."

¶3    Officer pulled up to the vehicle and parked his patrol car at a forty-five degree angle to the front of it. He requested backup, which arrived within "a couple of minutes." In the interim, Officer approached the passenger-side window of the vehicle and asked Jervis "if the car was his." Upon learning that "it was not," Officer asked Jervis who owned the vehicle, and Jervis verbally provided the owner's name. Jervis also provided Officer his own name, birthdate, and identification.

¶4    While Officer was questioning Jervis, Officer noticed a license plate lying on the front floorboard in the vehicle. Officer then went to the back of the vehicle and verified that the license plate number on the plate lying inside the vehicle matched the plate number on the back. Officer proceeded to run both the

---

1. Jervis does not challenge the district court's factual findings, and we therefore accept them as true. *See State v. Applegate*, 2008 UT 63, ¶ 19, 194 P.3d 925.

license plate number and Jervis's information through his computer system. In doing so, he verified the identity of the vehicle's owner. He also learned that there were "a couple of warrants" for Jervis's arrest. Accordingly, he arrested Jervis.

¶5 Although Officer did not initially find anything on Jervis's person in a search incident to his arrest, one of the assisting officers pointed out that Jervis "had dropped a small vial of what appeared to be marijuana on the driver's seat" as he was removed from the vehicle. Officer retrieved the vial and, from experience, felt "confident" that the substance it contained was marijuana. After Officer placed Jervis in the patrol car, another assisting officer pointed out that Jervis "seemed to be movin' around a lot." After asking Jervis whether he had missed something during the previous search, Officer conducted a second search and discovered "a couple of small plastic bags with a clear, crystalline substance in them" in Jervis's pocket, which field-tested positive as methamphetamine. Officer also found "a single pill in a larger plastic bag" that an assisting officer identified as buprenorphine, "a Schedule Three (3) substance."

¶6 The State charged Jervis with three counts of possession or use of a controlled substance, one count for each of the substances discovered in the search incident to arrest. It charged the marijuana and the buprenorphine counts as class B misdemeanors, and the methamphetamine count as a third degree felony.

¶7 After the preliminary hearing, Jervis filed a motion to suppress the evidence, arguing that Officer had unlawfully detained him "without reasonable, articulable suspicion of wrongdoing." Jervis argued that the fact that he was lawfully parked in the parking stall in the Honda Civic without a front license plate was "insufficient" to provide justification for his seizure or for Officer to "investigate [him] personally" by running the warrants check.

¶8    In response, the State conceded that Officer had detained Jervis, but it argued that Officer had reasonable articulable suspicion to detain him for three reasons. First, Officer could have reasonably suspected that the vehicle Jervis was sitting in "may have been stolen," because Honda Civics "are commonly stolen vehicles," "the Civic was located in a high-crime area," "there was no front license plate on the vehicle," and there were "oversized bolt holes where the license plate would normally be fastened," which would permit a reasonable suspicion that "the license plate may have been ripped from the vehicle." Second, the State argued Officer could have reasonably suspected that Jervis "had driven, or was about to drive, a vehicle without a front license plate," which is a class C misdemeanor violation of Utah Code section 41-1a-1305(5). Finally, the State argued that Officer could have reasonably suspected that Jervis—the only occupant of a vehicle missing a front license plate—"had removed a license plate from a vehicle," which is a class C misdemeanor violation of Utah Code section 41-1a-1305(2).

¶9    The district court denied Jervis's motion to suppress. The court made findings consistent with Officer's account; it found that Jervis was sitting in the driver's seat of a Honda Civic parked in the "far North side of the [motel's] parking lot, away from the motel rooms"; that "there was no license plate on the front of the Civic"; and that there were "oversized bolt holes where the license plate would normally be fastened." It also found that as a result of this encounter, Officer obtained Jervis's identifying information, discovered outstanding warrants for his arrest, and in a search incident to arrest discovered the controlled substances underlying Jervis's charges.

¶10    The court then concluded that the make and model of the vehicle and its parked position "on the North side of the parking lot" did not factually contribute "to a reasonable suspicion that [Jervis] was engaged in criminal activity" to justify the detention. However, the court concluded that "the absence of a front

license plate on the Civic did establish a reasonable suspicion that [Jervis] had committed, or was about to commit, a crime" under Utah Code section 41-1a-1305. Specifically, it determined that the absence of the plate created a reasonable suspicion that Jervis either had operated or was about to operate the vehicle without the plate attached in violation of subsection 1305(5), or that Jervis had removed the license plate in violation of subsection 1305(2). The court also determined that "the absence of a license plate raised a question of whether the car may have been stolen." Accordingly, because "the Honda Civic appeared on its face to be in violation of Utah law," the court concluded that "under a totality of the circumstances" Officer "had a reasonable articulable suspicion that [Jervis] had committed, or was about to commit, a criminal offense," and that Officer was therefore "entitled to initiate a detention in order to investigate further."

¶11 Ultimately, Jervis entered a *Sery* plea to one count of third degree felony possession of a controlled substance, reserving his right to appeal the adverse suppression ruling. *See generally State v. Toombs*, 2016 UT App 188, ¶ 10 n.3, 380 P.3d 390 (explaining that a *Sery* plea is "a conditional guilty plea that reserves the right to appeal a court's decision on a motion" (brackets, citation, and internal quotation marks omitted)). The other two counts were dismissed. Jervis appeals.

ISSUE AND STANDARD OF REVIEW

¶12 Jervis presents one issue for review: whether the district court incorrectly denied his motion to suppress by concluding that his detention was constitutionally permissible under the Fourth Amendment to the United States Constitution. "We review a trial court's decision to grant or deny a motion to suppress for an alleged Fourth Amendment violation as a mixed question of law and fact." *State v. Fuller*, 2014 UT 29, ¶ 17, 332 P.3d 937. To the extent a defendant challenges a district court's

factual findings, we review them for clear error, while we review the court's legal conclusions for correctness. *Id.*

ANALYSIS

¶13    The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. "The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular government invasion of a citizen's personal security." *State v. Applegate*, 2008 UT 63, ¶ 7, 194 P.3d 925 (citation and internal quotation marks omitted). As a result, the Fourth Amendment protects against unreasonable searches and seizures, not against all searches and seizures. *Id.*

¶14    Whether a particular seizure is unreasonable depends upon the level of the encounter between the police officer and citizen and the justification for it. Our court has "outlined the three constitutionally permissible levels of police stops":

> A level one encounter occurs when a police officer approaches a citizen and asks questions, but the person is not detained against his will and remains free to leave. A level two encounter occurs when a police officer temporarily seizes an individual because the officer has a reasonable, articulable suspicion that the person has committed or is about to commit a crime. Finally, a level three stop occurs when a police officer has probable cause to believe that a crime has been committed and effects an arrest of the suspect.

*State v. Biggs*, 2007 UT App 261, ¶ 10, 167 P.3d 544 (citations and internal quotation marks omitted).

¶15 Both parties concede that Jervis's seizure constituted a level two stop. We analyze the propriety of level two investigatory stops with a two-step test. First, we consider "whether the officer's action was justified at its inception." *State v. Worwood*, 2007 UT 47, ¶ 25, 164 P.3d 397 (citation and internal quotation marks omitted). The encounter is "justified at its inception" if it was supported by reasonable suspicion that criminal activity was afoot and that the individual in question was sufficiently connected to that criminal activity. *See State v. Markland*, 2005 UT 26, ¶¶ 16, 21, 26, 112 P.3d 507; *Biggs*, 2007 UT App 261, ¶ 11. Second, if we determine that a level two encounter was justified at its inception, we then "must determine whether the detention following the stop was reasonably related in scope to the circumstances that justified the interference in the first place." *Applegate*, 2008 UT 63, ¶ 9 (citation and internal quotation marks omitted). Even if the initial stop was justified by reasonable suspicion, "officers must diligently pursue a means of investigation that is likely to confirm or dispel their suspicions quickly." *See State v. Simons*, 2013 UT 3, ¶ 17, 296 P.3d 721 (citation and internal quotation marks omitted).

¶16 Jervis's arguments on appeal primarily center on whether Officer had reasonable suspicion to justify the initial stop. But he also briefly contends that Officer failed to diligently pursue the investigation under the second prong of the test. We therefore address Jervis's arguments as to each step in turn, and ultimately conclude that Officer's stop was permissible under the Fourth Amendment.

## I. Reasonable Suspicion

¶17 Jervis contends that there was an absence of reasonable suspicion to justify his detention at its inception, asserting that "the absence of a front license plate on a car parked on private property" could not create a reasonable suspicion that he had "operated [a] vehicle on a highway without a license plate,"

removed the plate himself, or stolen the car. He argues that the drug evidence recovered should therefore have been suppressed. *See Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (explaining that the exclusionary rule is "the principal judicial remedy" for an improper stop under the Fourth Amendment, and in the event of an improper stop, both "primary evidence" and "evidence later discovered and found to be derivative of an illegality" will be excluded from consideration in the case (citation and internal quotation marks omitted)).

¶18   Reasonable suspicion in the context of a level two investigatory stop is more than "merely an inchoate and unparticularized suspicion or hunch" that a defendant is connected to potentially criminal activity. *See State v. Gurule*, 2013 UT 58, ¶ 32, 321 P.3d 1039 (citation and internal quotation marks omitted); *see also State v. Warren*, 2003 UT 36, ¶ 14, 78 P.3d 590 (stating that "[i]n determining reasonableness, due weight must be given, not to [an officer's] inchoate and unparticularized suspicion or hunch, but to specific reasonable inferences which [an officer] is entitled to draw from the facts in light of his experience" (second and third alterations in original) (citation and internal quotation marks omitted)). Instead, reasonable suspicion "requires a particularized and objective basis, supported by specific and articulable facts." *Worwood*, 2007 UT 47, ¶ 23 (citation and internal quotation marks omitted). These facts are assessed in "the totality of the circumstances," *State v. Yazzie*, 2005 UT App 261, ¶ 7, 116 P.3d 969, along with rational inferences that may be drawn from those facts based upon "commonsense judgments and inferences about human behavior," *see Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *see also Markland*, 2005 UT 26, ¶¶ 11, 19. As a result, reasonable suspicion exists if the facts and rational inferences viewed in their totality at the time of the stop would cause a reasonable officer to suspect, in light of his or her experience and common sense, that the defendant has committed, is committing, or is about to commit a crime. *See Ornelas v. United States*, 517 U.S.

690, 696 (1996) (noting that "[t]he principal components of a determination of reasonable suspicion . . . will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion"); *Worwood*, 2007 UT 47, ¶ 23; *Markland*, 2005 UT 26, ¶ 19.

¶19 Further, in forming a reasonable suspicion, an officer is "not require[d] . . . to rule out innocent conduct or establish the likelihood of criminal conduct to the same degree as required for probable cause." *See Worwood*, 2007 UT 47, ¶ 23. Indeed, the reasonable suspicion standard "falls considerably short of satisfying a preponderance of the evidence standard." *State v. Richards*, 2009 UT App 397, ¶ 9, 224 P.3d 733 (citation and internal quotation marks omitted); *see also Wardlow*, 528 U.S. at 124–25 (indicating that in "dealing with inferences drawn from suspicious behavior" to support a reasonable suspicion to justify a stop, "we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists"); *United States v. Tibbetts*, 396 F.3d 1132, 1137 (10th Cir. 2005) (explaining that, for purposes of an investigatory stop, "the district court must determine whether [the officer] had *reasonable suspicion* of a violation, not whether there was *actually* a violation" (emphases added)), *abrogated on other grounds as recognized by United States v. Cunningham*, 630 F. App'x 873, 876–77 (10th Cir. 2015).

¶20 With these principles in mind, we conclude that Jervis's initial detention was supported by reasonable articulable suspicion that he had committed or was about to commit a crime. Specifically, we conclude that, considered in their totality, the facts articulated by Officer supported a reasonable suspicion that Jervis had driven or was about to drive the vehicle without a license plate in violation of Utah Code section 41-1a-1305(5). *See* Utah Code Ann. § 41-1a-1305(5) (LexisNexis 2014) (providing that it is a class C misdemeanor "to operate upon any highway

of this state any vehicle required by law to be registered without having the license plate or plates securely attached").[2]

¶21 Here, there are two central components of the suspected crime: operation of a vehicle on a highway of this state,[3] and the simultaneous lack of one of the required license plates. *See id.* The district court determined—and Jervis does not challenge on appeal—that at the time Officer observed the vehicle its front license plate was not attached. As a result, Officer need only have observed sufficient objective facts which might have reasonably suggested to him that Jervis had operated or was about to operate the vehicle on a highway in the same condition.

¶22 Here, Officer discovered the vehicle parked in a motel lot that was "just off the freeway," a motel which Officer knew to "receive[] lots of traffic" precisely because of its close proximity to the freeway. The vehicle was parked as far "away from the [motel's] available rooms" as it could be while still remaining in the lot. Officer observed Jervis sitting alone in the driver's seat of a vehicle with a missing front license plate, and he observed

---

2. The State also asserts that Jervis's detention was justified due to reasonable suspicion that he had removed the license plate or stolen the vehicle. Because we conclude there was reasonable suspicion to suspect Jervis of having driven or being about to drive the vehicle without a license plate, we do not address whether the facts supported a reasonable suspicion under these other two potential criminal scenarios.

3. Utah Code section 41-1a-102 defines "highway" as synonymous with "street," meaning "the entire width between property lines of every way or place of whatever nature when any part of it is open to the public, as a matter of right, for purposes of vehicular traffic." Utah Code Ann. § 41-1a-102(20) (LexisNexis 2014).

"oversized bolt holes" on the front bumper where the plate would normally have been.

¶23    In these circumstances, it is reasonable in light of common sense and ordinary human conduct to infer that, first, Jervis had operated or was about to operate the vehicle on a highway of this state, and second, that its operation had been or would be done without a license plate attached. *See Wardlow*, 528 U.S. at 125 (explaining that "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior").

¶24    First, common sense and human experience tell us that a person sitting alone in the driver's seat of a parked car in a private parking lot, which is accessible from public streets, has either driven the vehicle into the private parking lot from a highway or is about to drive the vehicle out of the private parking lot onto a highway. *See State v. Biggs*, 2007 UT App 261, ¶ 10, 167 P.3d 544 (explaining that a level two stop is permissible when supported by a reasonable articulable suspicion that "the person has committed or is about to commit a crime" (citation and internal quotation marks omitted)). Indeed, a car's central purpose is to provide transportation; it is primarily a vehicle for movement along and across our public streets. And while certainly not out of the realm of possibility, it is less common for a person who has not driven or is not planning to drive a vehicle to simply sit alone in the driver's seat of a parked car only for the sake of sitting. *See State v. Applegate*, 2008 UT 63, ¶ 12, 194 P.3d 925 (noting that an officer initiating an investigatory stop is "not required . . . to rule out innocent conduct prior to the stop"). This is particularly true in the context of a motel parking lot, which does not seem like a location where a person would choose to simply sit alone in a car parked at some distance from the motel rooms. And here, the vehicle was parked as far from access to the motel as possible, reasonably suggesting use of the lot as a

transitory, temporary stopping place rather than as a destination related to use as a motel guest.

¶25 Second, the fact that a license plate was missing from the front of the car permits a reasonable inference that Jervis's completed or anticipated operation of the vehicle had been or would be done with the front license plate detached. Officer observed not only that the license plate was missing, but also saw the "oversized bolt holes" on the front bumper where the plate should have been, suggesting that a plate had once been attached but had been removed. While it is conceivable that Jervis perhaps had driven the vehicle to the parking lot with the plate on, only to immediately remove it upon parking, or that Jervis was planning to reattach the plate in anticipation of operating the vehicle but simply had not done so when Officer arrived, Officer was not required to rule out these innocent explanations to justify the detention. *See id.* Rather, the absence of the front plate gave rise to a reasonable suspicion that any operation or anticipated operation of the vehicle had proceeded or would proceed in the same circumstances as Officer observed at the time of the stop—with the front plate detached. *See id.*

¶26 Jervis's arguments to the contrary do not require a different result. He first contends that Officer did not see him operating a vehicle on a highway. He also argues that the lack of other additional factual indicia suggesting he had been driving demonstrates a lack of reasonable suspicion. For example, he argues that Officer "had no information the Honda had recently been driven, such as lights or ignition on, warmth emanating from the hood region, or other physical indications the vehicle had recently [been] moved." He points out that "the vehicle was parked on private property, the engine was not running, . . . there is no evidence the key was in the ignition," and "[t]here was no testimony Jervis was wearing a safety belt." And he states that "[t]here is no reason to think [that] the Honda had not been lawfully parked in the [motel] lot for an extended

period of time," that Jervis "had driven it there[,] or that the front license plate was not on the car the last time it was driven."

¶27 But while these assertions may be true, Officer need not have personally observed Jervis driving the vehicle with the missing license plate to reasonably arrive at the suspicion that Jervis had done so or would do so. *See Applegate*, 2008 UT 63, ¶¶ 10–12. An important distinction between a level two and a level three stop is the quantity and quality of evidence supporting the stop. *See Biggs*, 2007 UT App 261, ¶ 10; *see also State v. Richards*, 2009 UT App 397, ¶ 9, 224 P.3d 733 ("Indeed, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." (citation and internal quotation marks omitted)). For a level two stop, a police officer does not have to demonstrate that a suspect has in fact committed a crime; the officer must demonstrate only the existence of facts that would cause a reasonable officer, using his common sense and experience, to suspect that the individual had or was about to commit a crime. *See supra* ¶¶ 18–19.

¶28 Moreover, the lack of other objective facts that could potentially bolster a reasonable suspicion does not negate the existence of the objective facts present or the related reasonable inferences. *Cf. Applegate*, 2008 UT 63, ¶ 12 (explaining that an investigatory stop is proper if "'the facts available to [the officer] at the moment of the [traffic stop] warrant[ed] a man of reasonable caution in the belief that the action taken was appropriate'" (second and third alterations in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968))); *State v. Yazzie*, 2005 UT App 261, ¶ 7, 116 P.3d 969 (explaining that "whether or not a detention is supported by reasonable suspicion is determined by examining the totality of the circumstances, not through an examination of each individual fact"). And in this case, the combination of objective facts—Jervis sitting alone in the driver's seat of a parked car with a detached front license plate in a

private parking lot accessible by a highway—would suggest to a reasonable person that the person sitting in the vehicle had committed or was about to commit the offense of driving on a highway without a required license plate attached, at least sufficiently to justify further investigation.

¶29 Jervis also contends that, under Utah law, Officer could not have detained him for a license plate violation, citing Utah Code section 41-1a-404 as support.[4] The relevant subsections provide,

> License plates issued for a vehicle other than a motorcycle, trailer, or semitrailer shall be attached to the vehicle, one in the front and the other in the rear.
>
> . . . .
>
> Enforcement by a state or local law enforcement officer of the requirement under Subsection (1) to attach a license plate to the front of a vehicle shall be only as a secondary action when the vehicle has been detained for a suspected violation by any person in the vehicle of Title 41, Motor Vehicles, other than the requirement under Subsection (1) to attach a license plate to the front of the vehicle, or for another offense.

---

4. We question whether this contention was adequately preserved. Jervis made no argument to the district court that his initial detention was impermissible on the basis of this statute or that the statute prevented Officer from forming reasonable suspicion under the Fourth Amendment sufficient to detain him. Nonetheless, the State appears to concede that it is preserved. We therefore follow the State's lead and assume for purposes of this appeal that this contention was properly preserved.

Utah Code Ann. § 41-1a-404(1), (4) (LexisNexis 2014). Jervis contends that given the plain language of these statutory provisions, even if Officer had formed a reasonable suspicion that Jervis had operated the vehicle on a highway without the front license plate, "that reasonable suspicion provided no basis for detaining Jervis under Utah law."

¶30    In essence, Jervis appears to be arguing that his detention was constitutionally infirm because a state statute forbade it, and that he should be entitled to Fourth Amendment remedies on that basis. In response, the State contends that Jervis's argument fails under *Virginia v. Moore*, 553 U.S. 164 (2008), and our supreme court's express acknowledgment and application of *Moore*'s holding in *State v. Harker*, 2010 UT 56, 240 P.3d 780.

¶31    In *Moore*, the Supreme Court determined whether "a police officer violates the Fourth Amendment by making an arrest based on probable cause but prohibited by state law." 553 U.S. at 166. The Supreme Court concluded that such an arrest did not violate the Fourth Amendment, reiterating that while states are free to provide "additional protections" "beyond the level that the Fourth Amendment requires," those additional protections are "matters of state law" and are ultimately "irrelevant" for Fourth Amendment and federal constitutional purposes. *Id.* at 171. Because the arrest in that case was supported by probable cause as required by the Fourth Amendment, it was constitutionally permissible. *Id.* at 176–78. Our own supreme court applied this holding in *Harker* to conclude that although the arrest at issue violated a state statute, it was nonetheless permissible under the Fourth Amendment because it was supported by probable cause. 2010 UT 56, ¶¶ 17–23.

¶32    Jervis contends that *Moore* and *Harker* can be distinguished because those cases dealt with arrests supported by probable cause, not mere investigatory detentions involving reasonable suspicion. But Jervis provides no principled basis for

us to conclude that those cases can or should be so distinguished in his favor. He does not explain, for example, why the overall reasoning under *Moore* and *Harker*—that a person is not entitled under the Fourth Amendment to use a state statute as a shield against otherwise constitutionally permissible searches and seizures—is applicable to arrests but not investigatory detentions; he points to no relevant distinguishing factor related to investigatory detentions that might somehow render them analytically distinct from arrests under a *Moore* or *Harker* analysis. Nor does he attempt to explain why Officer's alleged violation of a state statute relating to his seizure somehow entitles him to federal Fourth Amendment exclusionary remedies—a proposition that was also soundly rejected by *Moore* and *Harker*. *See Moore*, 553 U.S. at 174–75; *Harker*, 2010 UT 56, ¶¶ 22–23. As a result, we are unable to conclude that Officer's initial stop was impermissible under the Fourth Amendment on this basis. *Cf. State v. Snyder*, 932 P.2d 120, 130 (Utah Ct. App. 1997) (indicating that where a defendant "fails to provide any legal analysis or cite any legal authority supporting his argument," the reviewing court has "no basis for concluding that the ruling of the trial court was anything other than proper").

## II. Scope

¶33   Jervis also briefly asserts that even if the detention had been justified at its inception, Officer did not diligently pursue an investigation to discover information related to "a potential license plate violation." He contends this is demonstrated by the fact that Officer "did not question [him] regarding a potential license plate violation" and the fact that Officer "saw the front plate soon after he approached Jervis and knew that both plates were the same and present in or on the car." In essence, Jervis appears to be arguing that Officer was not justified in running a warrants check on him without questioning him about the potential license plate violation and allaying his concerns regarding that issue first.

¶34 But Jervis has not adequately demonstrated how requesting identification and running a warrants check amounted to an impermissible deviation from investigating a suspected violation related to Jervis's potential operation of the vehicle. As our supreme court recently explained in *State v. Martinez*, 2017 UT 43, Fourth Amendment jurisprudence has established that requesting identification and running a background check during an investigatory stop is independently permissible on the basis of officer safety. *Id.* ¶¶ 14–19 (stating, based on an extensive review of federal precedent, that "reasonable officer safety measures are related to the mission—and therefore to the scope—of a traffic stop itself," and characterizing an identification request and background check as a reasonable safety measure). And indeed, in *Utah v. Strieff*, the United States Supreme Court recently reiterated that requesting identification and running a background check during an investigatory stop are negligible precautions in light of officer safety, even in circumstances where an officer's "decision to initiate the stop was mistaken." 136 S. Ct. 2056, 2063 (2016) (explaining that it is lawful for an officer to run a routine warrants check on a defendant who has been detained in an investigatory stop, reasoning that "the warrant check [is] a 'negligibly burdensome precautio[n]' for officer safety" (second alteration in original) (quoting *Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015))); *see also Martinez*, 2017 UT 43, ¶¶ 14–19 (concluding on the basis of officer safety that an officer is not required to have "an objective basis for suspicion that [a] passenger [in a vehicle] is involved in criminal activity" to "request passenger identification and run a background check" (citation and internal quotation marks omitted)).

¶35 Jervis fails to address or deal with this established aspect of Fourth Amendment jurisprudence or explain how, despite existing precedent, in the particular circumstances of this case the request for his identification and the warrants check were

nonetheless impermissible. As a result, we conclude that Jervis has failed to carry his burden of persuasion on this issue.[5]

## CONCLUSION

¶36 We conclude that the district court did not err in concluding that Jervis's detention was permissible under the Fourth Amendment. Accordingly, we affirm.

––––––––––

5. The State contends that even if there was a Fourth Amendment violation, Jervis's outstanding warrants constituted "an intervening event sufficient to break the causal chain between the stop and the discovery of the drug evidence." Because we conclude that the stop was supported by reasonable suspicion and that Jervis has not otherwise persuaded us that a Fourth Amendment violation occurred, we do not address this argument.