**2016 UT App 188**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JAY WILLIAM TOOMBS,
Appellant.

Opinion
No. 20140386-CA
Filed September 1, 2016

First District Court, Logan Department
The Honorable Brian G. Cannell
No. 121100763

David M. Perry, Attorney for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGE J. FREDERIC VOROS JR. and SENIOR JUDGE RUSSELL W. BENCH concurred.[1]

TOOMEY, Judge:

¶1    In this appeal, Jay William Toombs challenges his convictions for attempted sexual abuse of a child. The primary issue on appeal is whether a communication alleging abuse to law enforcement amounted to a "report of the offense," triggering a four-year statute of limitations period. We conclude it did not and therefore affirm.

---

1. Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

BACKGROUND

¶2    In July 2012, Toombs was charged with five counts of sodomy on a child and five counts of aggravated sexual abuse of a child, each a first degree felony. The amended information alleged that Toombs sexually abused V.W., a child, between 1998 and 2001.

¶3    Toombs moved to dismiss the charges, claiming the offenses had been reported to law enforcement in late 2000, triggering the four-year statute of limitations. Specifically, he argued that one of his former neighbors (Neighbor) told law enforcement about an incident when Toombs bathed V.W.

¶4    A detective with the Logan City Police Department (Detective) contacted Neighbor after Toombs was arrested in January 2000 on charges of aggravated sexual abuse of a child for offenses against another child. Detective recorded his conversation with Neighbor and after talking to her asked her "to please write . . . the most detailed statement that [she] could possibly write about anything and everything that [she knew]" about Toombs's misconduct. Neighbor informed Detective that Toombs admitted to her that he had sexually abused Neighbor's son and that Toombs's wife told her Toombs had been seen in the neighborhood "loving and kissing" a teenage boy. Finally, based on what she knew about Toombs and had heard from V.W.'s grandmother, Neighbor told Detective she was concerned Toombs may have molested V.W. Specifically, Neighbor told Detective she had heard that V.W. had gone to Toombs's farm with Toombs and his sons, and when they returned V.W. "had been bathed and [was] ready for bed." She said that, after hearing that Toombs had "thrown [his sons and V.W.] in and gotten them all washed," she was concerned V.W. had been molested. In her two-page written statement, Neighbor provided details about Toombs's abuse of her own son and Toombs's inappropriate behavior with another neighborhood boy.

Neighbor also wrote that V.W.'s grandmother (who lived with V.W.) told her V.W. had been oddly tired lately but loved to go to Toombs's farm. She recounted that V.W.'s grandmother had been "pleasantly surprised" when V.W. returned from the farm after "he had been put through the tub and was all clean" after he had played in the mud. Neighbor stated that hearing about this "incident set off . . . blaring red lights" and made her "sick to [her] stomach."

¶5     The district court held an evidentiary hearing regarding Toombs's motion to dismiss. It heard testimony from Detective and received into evidence a transcript of Neighbor's interview and a copy of her written statement. Toombs's counsel argued that Neighbor's communications with Detective constituted a report of his offenses and were "sufficient to meet the standard reflected in [*State v. Green*, 2005 UT 9, 108 P.3d 710]."[2] Toombs's trial counsel explained that Detective created a police report based on Neighbor's statements, and argued that "the fact that [law enforcement] didn't [interview V.W.] does not mean that the *Green* test was not met."

¶6     Detective testified that in 2000 he had investigated allegations that Toombs had been "fondling" many young boys, some of whom were friends of Toombs's children. He recounted that in his investigations of several allegations involving many

---

2. *State v. Green*, 2005 UT 9, 108 P.3d 710, outlines a three-part test to determine what constitutes a "report." Specifically, a report is "(1) a discrete and identifiable oral or written communication[] (2) that is intended to notify a law enforcement agency that a crime has been committed and (3) that actually communicates information bearing on the elements of a crime as would place the law enforcement agency on actual notice that a crime has been committed." 2005 UT 9, ¶ 46. This test is discussed *infra* ¶¶ 19–24.

victims, Neighbor informed him she was concerned Toombs may have molested V.W. Detective explained that he had prepared one police report for all of the allegations against Toombs and that V.W.'s case was "one page of probably a 60-page police report." Detective also explained that the report dealt with "anybody and everybody that [he] ever spoke to whether [they were] victim, [or] not victim." Further, Detective "documented everything [he] did and who [he] spoke to . . . , good or bad."

¶7    Regarding Neighbor's statements, Detective explained that although Neighbor was concerned, V.W.'s family members, including his mother and grandmother, were not concerned about Toombs bathing V.W. He recounted that, even after he "explained everything to her and what [his] concerns were," V.W.'s mother "was very adamant that [Toombs] was not molesting V.W." V.W.'s mother "refused to allow [Detective] to speak to her son" and because V.W. was "only four or five years old," Detective did not try to contact V.W. directly. Detective also explained there was insufficient evidence to investigate this further, stating that Neighbor's suspicions stemmed from "small talk of [V.W.] going to play on the Toombs' farm." He also conceded that Neighbor's statement concerned him "enough for [him] to look into [her allegations] and try to go find out . . . if there was something there" but that "not everybody [he] came in contact with was molested by [Toombs]" and "[Toombs] didn't molest everyone, just some." Thus, although he was concerned Toombs may have sexually abused V.W., he did not think he had enough evidence to reach any conclusions or enough information to investigate further.

¶8    The district court ultimately denied Toombs's motion to dismiss. It explained that, based on the parties' arguments and Detective's testimony, "something further could have been done with the investigation or there could have been some additional discovery had more been done, but that is not sufficient to create

a situation where that initial report in fact is a report of an offense that qualifies under the statute of limitations." The court found that Detective "did learn from [Neighbor] that V.W. had been to the farm" and "had been bathed and returned ready for bed." But it concluded that "the evidence presented fails to satisfy the third factor of the *Green* test" because, although Neighbor's "communication was sufficient to raise suspicion against the defendant, it did not contain a sufficient level of specificity bearing on the elements of a crime as would place the law enforcement agency on actual notice that a crime has been committed."

¶9    In preparation for trial, several witnesses testified at a second evidentiary hearing, including Detective, V.W., V.W.'s mother, and another law enforcement agent. In particular, V.W. testified that Toombs abused him more than twenty times at the farm and at "least a hundred" times at Toombs's house. V.W. also testified that he first reported the abuse to a therapist in December 2010 and that V.W. "didn't remember [the abuse] until [he] watched a video about someone else being abused" in a group therapy session. V.W.'s mother generally testified that she did not want Detective to interview V.W. in 2000 "[b]ecause [she] had questioned [V.W.] several times and he had vehemently denied that anything had happened and [she], like an awful lot of people, were in a position of defense of [Toombs]."

¶10    Before trial, Toombs entered a *Sery* plea,[3] pleading guilty to three counts of attempted sexual abuse of a child. Specifically, "On 1/1/98 – 12/31/99 Jay Toombs on 3 occasions had the victim touch his penis [with] the intent to gratify his own sexual

---

3. A *Sery* plea is "a conditional guilty plea [that reserves] the right to appeal a court's decision on a motion." *In re T.S.*, 2015 UT App 307, ¶ 4 n.2, 365 P.3d 1221.

desires." As part of the plea bargain, Toombs reserved the right to appeal the issue of whether the statute of limitations barred his prosecution, and asked that the sentences for these crimes run concurrent with each other and with the "charges he is in prison for." The court sentenced Toombs to three concurrent zero-to-five year prison terms; it ordered Toombs to serve these sentences concurrent with his other sentences. Toombs appeals.

ANALYSIS

¶11    Toombs raises two issues on appeal; both issues challenge the court's denial of his motion to dismiss. First, he contends the court inappropriately concluded that Neighbor's communications were not a report of the offense and erred by not considering her statements in context with Detective's ongoing investigations. Second, he contends that his trial counsel performed ineffectively for not raising a statute-of-limitations defense.

¶12    Before considering whether prosecution of Toombs's crimes was barred by the statute of limitations and whether his counsel performed deficiently by purportedly not raising it as a defense, we must first determine which statute of limitations applied when Toombs committed the crimes. *See State v. Lusk*, 2001 UT 102, ¶ 18, 37 P.3d 1103. Next, we must determine if the limitations period expired before the State charged Toombs in this case. *See id.*

¶13    To determine the proper statute of limitations, "we apply the law as it existed at the time of the violation charged." *Featherstone v. Schaerrer*, 2001 UT 86, ¶ 21 n.2, 34 P.3d 194. Here, the amended information alleged that between 1998 and 2001 Toombs committed five counts of sodomy, Utah Code Ann. § 76-5-403.1 (Michie 1995), and five counts of aggravated sexual abuse of a child, *id.* § 76-5-404.1.

¶14    In 1983, the Utah Legislature enacted sections 76-5-403.1 and 76-5-404.1, which defined the crimes of "sodomy on a child" and "sexual abuse of a child." According to those sections,

> [a] person commits sodomy upon a child if the actor engages in any sexual act upon or with a child who is under the age of 14, involving the genitals or anus of the actor or the child and the mouth or anus of either person, regardless of the sex of either participant.

*Id*. § 76-5-403.1(1).

> A person commits sexual abuse of a child if, under circumstances not amounting to rape of a child, object rape of a child, sodomy upon a child, or an attempt to commit any of these offenses, the actor touches the anus, buttocks, or genitalia of any child . . . or otherwise takes indecent liberties with a child, or causes a child to take indecent liberties with the actor or another with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.

*Id.* § 76-5-404.1(1). Further, sexual abuse of a child could be enhanced to "aggravated sexual abuse of a child" if the offense was committed in conjunction with any one of the several circumstances listed in the statute, including if "[t]he accused, prior to sentencing for this offense, was previously convicted of any felony . . . involving a sexual offense," if "[t]he accused committed . . . more than five separate acts," or if the accused used "force, duress, violence, intimidation, coercion, menace, or threat of harm" in committing the offense. *Id.* § 76-5-404.1(3). Sodomy on a child and aggravated sexual abuse of a child are

both first degree felonies. *See id.* § 76-5-403.1(2); *id.* § 76-5-404.1(4).

¶15 Generally, between 1998 and 2001 "a prosecution for . . . a felony . . . [had to] be commenced within four years after it [was] committed." *Id.* § 76-1-302(1)(a). But "[i]f the period prescribed in Subsection 76-1-302(1) has expired, a prosecution may nevertheless be commenced for . . . rape of a child, object rape of a child, sodomy upon a child, or sexual abuse of a child within four years after the report of the offense to a law enforcement agency." *Id.* § 76-1-303.[4] In 2008, however, the legislature repealed the section of the statute imposing a four-year statute of limitations and expanded the limitations period for aggravated sexual abuse of a child and sodomy on a child. Act of Feb. 11, 2008, ch. 129, §§ 1, 3, 2008 Utah Laws 1143, 1143–44. Specifically, the revised statute of limitations, found in Utah Code section 76-1-301(2), allows the State to commence prosecution "at *any time*." Utah Code Ann. § 76-1-301(2)(m), (o) (LexisNexis Supp. 2012) (emphasis added).

¶16 "'[A] statutory amendment enlarging a statute of limitations will extend the limitations period applicable to a crime already committed *only if* the amendment becomes effective before the previously applicable statute of limitations has run, thereby barring prosecution of the crime.'" *State v. Green*, 2005 UT 9, ¶ 20, 108 P.3d 710 (emphasis added) (quoting *State v. Lusk*, 2001 UT 102, ¶ 26, 37 P.3d 1103). "In other words,

---

4. In 1999, the legislature amended the code and enacted section 76-1-303.5, which specifically provided a statute of limitations for sexual abuse of a child. This section only reiterated that "a prosecution may nevertheless be commenced for . . . sodomy upon a child . . . or aggravated sexual abuse of a child within four years after the report of the offense to a law enforcement agency." Utah Code Ann. § 76-1-303.5 (Lexis 1999).

no subsequent amendment of a statute that enlarges a limitations period can resurrect the State's ability to prosecute a crime already barred because of the running of the statute of limitations." *Lusk*, 2001 UT 102, ¶ 26. Accordingly, if Neighbor's communications are a "report of the offense," triggering the four-year statute of limitations in effect at the time Toombs committed the offenses, then the limitations period expired in 2004—before the 2008 amendment extended the limitations period indefinitely—and barred prosecution of these charges in 2012. By contrast, if Neighbor's communications did not trigger the statute of limitations, the four-year statute of limitations period had not yet run and the State's charges were therefore timely brought in 2012.

## I. Report of the Offense

¶17    "When an issue concerning the statute of limitations is raised, the judge shall determine by a preponderance of the evidence whether the prosecution is barred by the limitations in this part." Utah Code Ann. § 76-1-306 (Lexis 1999). Here, the court found that by "a preponderance of evidence, [it could not] conclude that [Neighbor's statement] was sufficient enough to trigger the statute of limitations." It also concluded that the Neighbor's statement "fails the third factor in the *Green* test."

¶18    "We will defer to the trial court's findings concerning the existence and content of the alleged communications unless we find them to be clearly erroneous." *Green*, 2005 UT 9, ¶ 25. But the court "was also required to compare its findings concerning the communications to the statutory mandate that a prosecution commence 'within four years after the report of the offense to a law enforcement agency.'" *Id.* ¶ 26 (quoting Utah Code Ann. § 76-1-303(3)). This "undertaking first obliged the trial court to interpret the phrase[] 'report of the offense' . . . , a legal exercise, which we review for correctness." *Id.*

¶19    In *State v. Green*, the Utah Supreme Court defined "report of the offense" in Utah Code section 76-1-303(c). 2005 UT 9, ¶¶ 42–47. The court adopted "a three-part test for evaluating whether something qualifies as a 'report of the offense.'" *Id.* ¶ 46. Specifically, this test requires

> (1) a discrete and identifiable oral or written communication[] (2) that is intended to notify a law enforcement agency that a crime has been committed and (3) that actually communicates information bearing on the elements of a crime as would place the law enforcement agency on actual notice that a crime has been committed.

*Id.* The court explained that a report of the offense "is a communication made for the purpose of alerting law enforcement to the existence of criminal conduct." *Id.* ¶ 42. Further, a report must be something more than "mere clues that criminal conduct has occurred"; rather it requires "a heightened level of specificity," *id.* ¶¶ 43–44, and should contain "a degree of articulation of criminal conduct sufficient to permit a law enforcement agency to conclude what was done and who did it without additional investigation or analysis," *id.* ¶ 43.

¶20    Because the parties do not dispute that Neighbor's communications meet the first two prongs of this test, we focus on whether Neighbor's statement meets the third prong. Toombs argues the Utah Supreme Court "did not require the report to identify the elements of offenses, or to identify the crime(s) committed, something that lay people are not equipped to [do]." "Rather," he contends, "the court merely required that the report '*communicate information bearing on*' the elements of a crime such that the police would be on notice that a crime had been committed." (Emphasis added.) Essentially, he argues that a known "sexual predator giving a bath to a five year old boy, late at night and then clothing him in pajamas and returning him

home definitely puts the State on notice that a crime has been committed and should constitute a report under *Green*." We cannot agree.

¶21 Although Neighbor's communications may have been intended to inform Detective of criminal conduct, her statements only articulated her suspicions and merely offered clues that a crime may have occurred. In particular, Neighbor informed law enforcement, verbally and in her written statement, that she had heard that V.W. went to Toombs's farm and was returned later than expected after V.W. "had been bathed and [was] ready for bed." She said Toombs had "thrown [V.W. and Toombs's sons] in [the bath] and gotten them all washed." She also said that although V.W.'s family was not concerned V.W. had been molested, she was. In her written statement, she recounted that V.W. "had been put through the tub and was all clean," which "set off some blaring red lights" and made her concerned that Toombs had molested V.W.

¶22 So, although Neighbor communicated aspects of Toombs's inappropriate behavior with other children, she did not provide any details about the purported sexual abuse of V.W. Specifically, Neighbor told Detective about the time Toombs put his hand down her own son's pants and that Toombs had been seen kissing a teenage boy on a street in the neighborhood. But beyond telling Detective that V.W. was bathed before being returned home around bedtime in the fall of 1999, Neighbor did not allege conduct between Toombs and V.W. with any level of specificity.

¶23 Toombs's argument essentially asks us to assume that because he was known to have molested other boys of a similar age, Neighbor's second-hand report that V.W. had a bath at Toombs's farm should have put law enforcement on notice that Toombs molested V.W. Toombs asserts that Neighbor's "statements certainly bore on the elements of the crimes at issue"

because they identified the perpetrator, the victim, "that Toombs had sexually molested V.W.," and other details about V.W. such as where he lived. But without a higher "level of specificity," Neighbor's statements do not articulate "criminal conduct sufficient to permit a law enforcement agency to conclude what was done and who did it without additional investigation or analysis." *See State v. Green*, 2005 UT 9, ¶¶ 43–44, 108 P.3d 710. From Neighbor's communications one cannot ascertain where the touching occurred, what happened, or how it happened "without additional investigation or analysis." *See id.* ¶ 43. Indeed, Detective's additional investigations, which included questioning V.W.'s mother, provided no answer to these questions. Accordingly, we cannot assume that V.W. having a bath put law enforcement on notice that Toombs sexually abused V.W. We therefore conclude the district court did not err when it determined, "While the facts in the case may say that the communication was sufficient to raise suspicion, it does not rise to the level of specificity of 'bearing on the elements of a crime as would place the law enforcement agency on actual notice that a crime had been committed.'" (Quoting *id.* ¶ 46.)

¶24   Because Neighbor's communications did not equate to a "report of the offense" to law enforcement, the four-year statute of limitations was not triggered and had not expired before the State charged Toombs with these crimes in 2012.

## II. Ineffective Assistance of Counsel

¶25   Second, Toombs argues his trial counsel rendered constitutionally ineffective assistance of counsel because she "failed to recognize that, at the time the alleged offenses were first reported, . . . the statute of limitations . . . had been repealed, was void, and that no amendment or newly enacted statutory provision became effective before, and thus did not extend the previously applicable statute of limitations." In order to demonstrate ineffective assistance of counsel "a defendant must

show (1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) that but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *State v. Nelson-Waggoner*, 2004 UT 29, ¶ 27, 94 P.3d 186 (citation and internal quotation marks omitted); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that a defendant claiming ineffective assistance of counsel "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense").

¶26    We cannot conclude that Toombs's trial counsel rendered ineffective assistance of counsel and are baffled by Toombs's arguments that counsel's performance was "deficient and fell below an objective standard of professional reasonableness in failing to realize and [ensure] that prosecution was not barred by the expiration of the applicable statute of limitations." Trial counsel filed a motion to dismiss the charges against Toombs, arguing that the statute of limitations had expired. Indeed, she insisted that the four-year statute of limitations had been triggered in 2000 and expired in 2004. Furthermore, trial counsel assisted Toombs in reserving the right to appeal the district court's denial of his motion to dismiss even after he pleaded guilty and waived his right to appeal his convictions. We therefore conclude that Toombs has failed to demonstrate that his counsel provided deficient performance.

¶27    To the extent that Toombs argues that neither the four-year statute of limitations nor the newly enacted 2008 statute of limitations apply to his charges because there "was no overlap between the previous statute of limitations 76-1-303.5, which was repealed and ineffectual as of midnight May 4, 2008, and the new statute of limitations 76-1-301, which was made effective May 5, 2008," we conclude the argument is inadequately briefed. *See* Utah R. App. P. 24(a)(9). Toombs briefly suggests the prior statute of limitations had run because it was repealed before the

2008 statute of limitations went into effect. But he has failed to develop this argument and has offered no support for his factual assertions or his legal conclusions. "While failure to cite to pertinent authority may not always render an issue inadequately briefed, it does so when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998). In any event, this court has recently dismissed a similar argument, in *Lucero v. State*, as "questionable" and contrary to settled law. *See* 2016 UT App 50, ¶ 13, 369 P.3d 469.

CONCLUSION

¶28    In sum, although the four-year statute of limitations was in effect at the time Toombs committed the charged offenses, the four-year limitations period was not triggered in 2000 and did not expire before the limitations period was indefinitely extended in 2008. Neighbor's statements communicated her suspicions that a crime may have occurred, but they did not articulate sufficient detail "to permit a law enforcement agency to conclude what was done and who did it without additional investigation or analysis." *See State v. Green*, 2005 UT 9, ¶ 43, 108 P.3d 710. Finally, because he failed to demonstrate that his counsel performed deficiently, Toombs cannot demonstrate that his trial counsel provided constitutionally ineffective assistance of counsel. We therefore affirm the district court's order denying Toombs's motion to dismiss.

———————