2024 UT App 63

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
SYLVESTOR PETE BEGAY,
Appellant.

Opinion
No. 20230228-CA
Filed May 2, 2024

First District Court, Brigham City Department
The Honorable Brandon J. Maynard
No. 211100268

Brady G. Stuart, Attorney for Appellant

Sean D. Reyes and Connor Nelson,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN D. TENNEY concurred.

HARRIS, Judge:

¶1 In 2021, Sylvestor Pete Begay was charged with two sex crimes that the State asserted he had committed in 1996 or 1997. Specifically, the State accused Begay—who was then twenty-two—of raping and sexually abusing a girl (Laura[1]) who was then thirteen. Begay filed a motion to dismiss, asserting that the statute of limitations had long since expired. The district court denied Begay's motion, and Begay asked for permission—which we granted—to take an interlocutory appeal of that decision.

¶2 The statute of limitations question in this case turns on whether a "report of the offense" was made to local law

---

1. A pseudonym.

enforcement in January 1998, when Laura's friend (Friend) informed a local police officer (Officer) that Begay had been "having sex" with Laura. Under the circumstances presented, we conclude that Friend's report was indeed a "report of the offense to a law enforcement agency" that operated to start the running of the statute of limitations. From this conclusion, it follows that the limitations period expired in 2002, well before the statute was amended (in 2008) to abolish any limitations period for these categories of crimes, and well before these charges were filed (in 2021). We therefore reverse the district court's order denying Begay's motion to dismiss, and we remand the case with instructions to dismiss the charges.

BACKGROUND

*Events That Occurred in the 1990s*

¶3      In January 1998, Friend—who was then fourteen—met with Officer and stated that she wanted to "press charges against someone that [had] raped" her. She told Officer that Begay—a person that she "hung out with" a lot and who she believed was twenty-six at the time of the interview—had "fingered" her and then "un[did] his pants" and "started having sex" with her, despite her having told him "no" and that she was "not ready." Although Officer did not specifically ask Friend what she meant by "having sex," Officer apparently understood that term to include vaginal intercourse: as follow-up questions, she asked Friend if Begay "use[d] a condom," whether "he ejaculated," and whether Friend had "started bleeding," and she advised Friend to take "a pregnancy test."

¶4      At the end of the interview, Officer asked Friend whether there were "other girls that [Begay] might have been having sex with." In response, Friend stated that she knew one such person

but that she didn't "know if [she could] tell" Officer about that without "breaking confidentiality." Officer then stated as follows:

> Actually, if she's under the age of eighteen and you know that someone has been sexually abused, you're obligated by law to *report* them. . . . The therapist said either you can *report* it or I can *report* it because it's got to be *reported* because it is against the law. Especially if the person is under the age of fourteen. That makes it an even more serious thing.

(Emphasis added.)

¶5     At this point, the transcript of the interview ends. But at an evidentiary hearing in this case, Friend testified that she supplied Officer with the name of the other girl—Laura—with whom Begay had been having sex. Friend then relayed to Officer that Begay had been doing "the same things" to Laura that he'd been doing to her, and that Laura had "also had sex" with Begay. Officer's notes from the interview include Laura's full name and birthdate, indicating that Officer also knew that—depending on the exact date of Laura's encounters with Begay—Laura would have been at most fourteen, and perhaps only thirteen, when the alleged conduct occurred. But there is no indication in the record that Friend gave Officer any date—estimated or not—on which Begay purportedly had sexual contact with Laura. There is also no indication in the record that Friend told Officer how she knew about the contact between Begay and Laura, although Friend testified later, at the evidentiary hearing, that she learned about it from Laura directly; she explained that, when she and Laura were assigned to "in-school suspension" together, Laura learned that Begay had sexually assaulted Friend, and Laura "kind of comfort[ed]" Friend by "letting [Friend] know that the same thing had happened to her."

¶6    Four days after her 1998 interview with Friend, Officer interviewed Begay. During this interview, Begay acknowledged having sex with Friend but claimed she had been "a willing partner." Toward the end of the interview, Officer asked Begay if he had "gone out with other girls" Friend's age, and Begay admitted that he "ha[d] once." Officer asked if that was with Laura, and Begay acknowledged that it was. Officer then directly asked Begay if he "had sex with" Laura, and Begay claimed that he had not. A few minutes later, Officer asked again about Laura, telling Begay that Friend had already informed Officer that Begay "may have had sex with [Laura] also" but that she had not "been able to get hold of [Laura] yet" to ask her about it directly. Officer then asked, "What is [Laura] going to tell me when I do talk to her? Is she going to tell me that you did or you didn't [have sex]?" Begay again denied having sex with Laura, telling Officer that, if asked, Laura would "[s]ay that [he] did not have sex with her."

¶7    Neither Officer nor any other law enforcement agent talked with Laura at that time. And while the State—in 1998—charged Begay with crimes related to his actions with Friend, it did not—until 2021—charge Begay with any crimes related to Laura.

*Recent Events*

¶8    In 2021, Laura contacted police "to report a rape that occurred 25 years ago." In her report, she explained that when she was thirteen years old, Begay—who was twenty-two at the time—had "penetrated her vaginally with his penis" when he had "taken her to the park near the tennis courts in his car." She had resisted, telling him, "I don't think we should do this, like I don't think it's safe, I don't wanna do this." And this was not their only sexual encounter; Laura also claimed that Begay had "penetrat[ed] her vagina with his fingers" on a later occasion "at his adopted parent's home."

¶9　After receiving Laura's report, officers interviewed Begay again, and this time he told a different story regarding Laura: he acknowledged that he had "sexual intercourse" with Laura some twenty-five years ago, but he claimed it had been "consensual."

¶10　The State then charged Begay with one count of rape of a child and one count of sexual abuse of a child, asserting that the events in question had occurred between January 1996 and January 1997, before Laura had turned fourteen. Later, Begay filed a motion asking the court to dismiss the charges, asserting that the statute of limitations that applied at the time—a four-year statute triggered by a "report of the offense to a law enforcement agency," *see* Utah Code § 76-1-303.5 (1996)—had begun to run in January 1998 at the time of Friend's interview with Officer, and had therefore expired in 2002.

¶11　The district court held an evidentiary hearing on the issue. Five witnesses testified, including Friend, Laura, and Officer, all of whom testified about the 1990s events described above. Friend also clarified that her intention in going to law enforcement in January 1998 was not necessarily to report a crime committed against Laura but "to report a crime against [her]self." And Officer acknowledged that, in her view, "if someone comes to the police station and they tell [an officer] about a crime that they're aware of," then it is "a report that's been made."

¶12　At the conclusion of the hearing, the district court made an oral ruling denying Begay's motion to dismiss. At the outset, the court commented that the question was "very close." But it ruled that Friend's statement to Officer was not a "report of the offense" to law enforcement because, in the court's view, Friend's statement "lack[ed] the specificity so that it would . . . actually communicate information bearing on the elements of a crime." Begay's attorney asked the court to "clarify" why a "report . . . that [Laura] had had sex with" Begay wouldn't qualify as a "report," and the court responded, "Because sex also doesn't

always mean sex . . . . We had a President of the United States that made that very clear . . . and so everyone has different definitions." On that basis, the court concluded that Friend's report "lack[ed] specificity."

¶13  The court later memorialized its oral ruling in a written order stating simply that it "adopts the factual and legal findings stated on the record at the conclusion of the oral arguments." Begay sought permission to appeal this order, which we granted.

## ISSUE AND STANDARD OF REVIEW

¶14  Begay appeals the district court's denial of his motion to dismiss the charges on statute-of-limitations grounds. As a general matter, "[w]hether the [district] court applied the proper statute of limitations is a matter of law that we review for correctness." *State v. Green*, 2005 UT 9, ¶ 15, 108 P.3d 710. And to the extent that the question turns on statutory interpretation, we review the district court's decision for correctness. *See State v. Toombs*, 2016 UT App 188, ¶ 18, 380 P.3d 390 (stating that interpretation of the phrase "report of the offense" is a "legal exercise, which we review for correctness" (quotation simplified)), *cert. denied*, 390 P.3d 724 (Utah 2017). But to the extent that the court made factual findings "concerning events relevant to the application of the statute of limitations," we apply a more deferential standard, and "we will not disturb" such factual findings "unless clearly erroneous." *See Green*, 2005 UT 9, ¶ 15.

## ANALYSIS

¶15  The parties agree that the version of the statute of limitations that controls the outcome of this appeal is the one that was in effect in the late 1990s, at the time of the alleged offenses and at the time of Friend's interview with Officer. That statute

provided that "a prosecution may . . . be commenced for . . . [r]ape of a child . . . [or] sexual abuse of a child . . . *within four years after the report of the offense to a law enforcement agency*." Utah Code § 76-1-303.5 (1996) (emphasis added).[2]

¶16    Our supreme court, interpreting this statute, has set forth "a three-part test for evaluating whether something qualifies as a 'report of the offense.'" *See State v. Green*, 2005 UT 9, ¶ 46, 108 P.3d 710. This test requires:

> (1) a discrete and identifiable oral or written communication[]
>
> (2) that is intended to notify a law enforcement agency that a crime has been committed and

---

2. In 2008, our legislature "repealed the section of the statute imposing a four-year statute of limitations and expanded the limitations period for" rape of a child and sexual abuse of a child, among other offenses. *See State v. Toombs*, 2016 UT App 188, ¶ 15, 380 P.3d 390, *cert. denied*, 390 P.3d 724 (Utah 2017). Under current (post-2008) law, prosecutions for these offenses may be commenced "at any time." *See* Utah Code § 76-1-301(2)(i), (n). But "a statutory amendment enlarging a statute of limitations will extend the limitations period applicable to a crime already committed only if the amendment becomes effective before the previously applicable statute of limitations has run." *State v. Lusk*, 2001 UT 102, ¶ 26, 37 P.3d 1103; *see also Mitchell v. Roberts*, 2020 UT 34, ¶ 5, 469 P.3d 901 (holding that our legislature is "prohibited from retroactively reviving a time-barred claim in a manner depriving a defendant of a vested statute of limitations defense"). Thus, if Begay is correct that the applicable statute of limitations expired in 2002, then the 2008 statutory amendment cannot operate to revive the expired limitations period.

(3) that actually communicates information bearing
on the elements of a crime as would place the law
enforcement agency on actual notice that a crime
has been committed.

*Id.* Both sides agree that Friend's statements to Officer in January
1998 constitute a discrete and identifiable oral communication,
and that the first element of the test is therefore satisfied. The State
does not agree, however, that the other two elements of the test
are satisfied here, and we discuss each in turn.

A. Communication Intended to Notify Police of a Crime

¶17    In the district court, the State did not make any argument
regarding the second element, telling the court that Friend's
interview with Officer "probably satisfies the second prong of the
*Green* test." But on appeal, the State reminds us that we can affirm
the district court's decision on any ground apparent in the record,
and it now asserts that the second element was not satisfied. The
State grounds its argument in Friend's statement, made at the
evidentiary hearing, that her intent in sitting down with Officer
for an interview was "to report a crime against [her]self," and not
to report any crime involving Laura. The State bolsters its
argument by pointing to Friend's expressed reluctance to tell
Officer about Laura, asserting that this indicates that Friend's
intention in contacting police had nothing to do with Laura. The
State thus focuses on Friend's general intent in sitting down for
the interview in the first place, and it asserts that the second
element cannot be met unless Friend's general intent in going to
the police was to make a report about Laura. We disagree.

¶18    The second element turns not on Friend's general intent in
reaching out to police at all, but instead on what her specific intent
was, at the end of the interview, when she—reluctantly or not—
answered Officer's questions about Laura. Even if Friend's initial
intent in contacting police had nothing to do with Laura, the

second element is met if, in answering specific questions about Laura and providing specific information about Laura, she intended to "notify a law enforcement agency that a crime has been committed." *See id.* And on that point, the record is clear.

¶19　Recall that Friend initially hesitated when Officer asked her if she knew of anyone else Begay had been "having sex with." Officer attempted to allay Friend's hesitation by informing her that she had a legal obligation—a presumed reference to the child abuse reporting statute[3]—to "report" known instances of sexual abuse committed against children. In response to this admonition, Friend then provided Officer with Laura's name and told Officer that Begay had been having sex with Laura. In context, it is clear that this specific communication was intended to notify Officer that a crime had been committed. The second element of the *Green* test is therefore satisfied here.

### B. Information Bearing on the Elements of a Crime

¶20　The closer question in this case is whether the third element of the *Green* test is satisfied here. That element requires that the communication in question actually contain "information bearing on the elements of a crime as would place the law enforcement agency on actual notice that a crime has been committed." *See id.*

¶21　To satisfy this third element, it is not necessary for the reporter to reference specific sections of the Utah Code, or even to specify exactly which crime the reporter believes has been committed. *See id.* ¶ 43 ("[I]t would be unreasonable to adopt an overly narrow interpretation of an 'offense,' for instance, one that

---

3. Both in 1998 and today, subject to certain exceptions not applicable here, "any person" who "has reason to believe that a child has been subjected to" abuse is obligated to "immediately notify the nearest peace officer." *Compare* Utah Code § 62A-4a-403(1) (1998), *with id.* § 80-2-602(1) (2023).

could be satisfied only through reference to Utah Code sections.”). On the other hand, a report does not satisfy this third element if it contains “mere clues that criminal conduct has occurred.” *See id.* Our supreme court has attempted to resolve this tension by stating that the report must contain “a degree of articulation of criminal conduct sufficient to permit a law enforcement agency to conclude what was done and who did it without additional investigation or analysis.” *Id.*

¶22 The court’s formulation of the element itself strongly indicates that a report can satisfy the third element even if, following receipt of the report, officers still have some question about *which specific crime*, stemming from the reported conduct, was actually committed. As our supreme court has formulated it, this third element is satisfied if the report contains “information bearing on the elements of a crime as would place the law enforcement agency on actual notice that *a crime* has been committed.” *Id.* ¶ 46 (emphasis added); *see also McCamey v. State*, 2017 UT App 97, ¶ 17, 400 P.3d 1114 (per curiam) (concluding that a report did not contain sufficient information to satisfy the third element because the communications in question “required further investigation to determine what, *if any*, criminal activity might have occurred” (emphasis added)), *cert. denied*, 406 P.3d 253 (Utah 2017). And this makes sense at a practical level, because lay reporters of factual information will often not know the particular requirements of the relevant criminal statutes. As we read the relevant statute and our supreme court’s guidance as to how to interpret it, the third element is satisfied if the report in question includes sufficient information for police to conclude that criminal activity took place and was committed by a particular individual, even if police might not know, in that moment, exactly which crime would be appropriate to charge. *See Green*, 2005 UT 9, ¶ 43 (stating that the report must allow police “to conclude what was done and who did it”).

¶23    Based on the information Friend provided, Officer knew that Begay had been "having sex" with Laura. The State asserts that this phrase is too vague for Officer to have known exactly what transpired, and the district court agreed with that reasoning.[4] We take a different view.

¶24    To resolve the question, as presented in this appeal, of whether the phrase "having sex" is unduly vague, we need not arrive at a generally applicable definition of the phrase. We can readily assume, for purposes of the discussion, that the phrase "having sex" might, as used in some contexts, connote sexual activity other than vaginal intercourse. But even so, in this particular case that phrase as used by Officer and Friend was clearly intended to mean vaginal intercourse. Friend told Officer that Begay began by "finger[ing]" her, then later "un[did] his pants" and "started having sex" with her. While Officer did not ask Friend to specify which body parts she was talking about, Officer clearly understood the reference to mean vaginal intercourse, because Officer followed up by advising Friend to take "a pregnancy test," and by asking Friend if Begay "use[d] a condom," whether "he ejaculated," and whether Friend had "started bleeding."

¶25    Just seconds later, Officer asked Friend to identify "other girls that [Begay] might have been having sex with." And Friend responded by telling Officer that Begay had been doing "the same things" to Laura that he had been doing to her, and that he had "also had sex" with Laura. In context, given the conversation

---

4. The district court—apparently on its own—analogized this situation to the one in which former President Clinton infamously denied having "sexual relations" with a White House intern. *See Jones v. Clinton*, 36 F. Supp. 2d 1118, 1121, 1130 (E.D. Ark. 1999). We find the analogy far less helpful here than the district court did, chiefly because "sexual relations" is a different—and arguably much vaguer—phrase than "having sex."

Officer and Friend had been having and how they had been using the term "having sex," it was clear to Officer that Friend was asserting that Begay had engaged in vaginal intercourse with Laura. Thus, at the conclusion of the interview, Officer knew "what was done and who did it." *See id.* Specifically, she knew that, according to Friend, Begay had been engaging in vaginal intercourse with Laura.

¶26　Officer also knew Laura's birthdate, and from that information was able to ascertain that, as of the date of the interview with Friend, Laura was not quite fifteen. But Officer did not yet know the exact date of the sexual interactions between Laura and Begay. Given Laura's age, those interactions had to have occurred either (a) when Laura was fourteen or (b) when Laura was younger than fourteen. Either way, though, Officer knew that—if Friend's report was true—Begay had committed a felony crime by having sex with Laura.

¶27　If Laura had been younger than fourteen when Begay had sex with her, Begay committed the first-degree felony crime of rape of a child. *See* Utah Code § 76-5-402.1(1), (2) (1996) (stating that "[a] person commits rape of a child when the person has sexual intercourse with a child who is under the age of 14," and that the crime "is a first degree felony"); *see also In re C.N.*, 2023 UT App 41, ¶ 37, 529 P.3d 1030 (holding that "the term 'sexual intercourse' as used in the rape of a child statute" means "vaginal sex"). But even if Laura had been fourteen when Begay had sex with her, that still constituted criminal activity, albeit of a lesser severity: in that instance, Begay would have committed the third-degree felony crime of unlawful sexual intercourse. *See* Utah Code § 76-5-401(1), (2) (1997) (stating that "[a] person commits unlawful sexual intercourse if . . . that person has sexual intercourse with a person, not that person's spouse, who is under sixteen years of age," and that the crime is "a felony of the third degree").

¶28 In a situation like this, where a law enforcement officer receives a report clear enough to indicate that an individual committed a crime, that report communicated sufficient "information bearing on the elements of a crime as would place the law enforcement agency on actual notice that a crime has been committed." *See Green*, 2005 UT 9, ¶ 46. And this is true even if the officer does not know, at the conclusion of the interview, exactly which crime stemming from the reported conduct would be appropriate to charge. We therefore conclude that Friend's report to Officer satisfied the third element of the *Green* test.[5]

¶29 We recognize that, in all three Utah appellate court opinions that have considered whether a report was sufficient to start the running of this particular statute of limitations, the courts have concluded that the report was insufficient. *See id.* ¶¶ 40–54; *McCamey v. State*, 2017 UT App 97, ¶¶ 14–20, 400 P.3d 1114 (per

---

5. At oral argument before this court, questions arose about whether the two charges against Begay must rise or fall together as concerns the propriety of dismissal, or whether we might be able to separate them for purposes of considering whether Friend's report was sufficient. But neither side raised this issue in front of the district court, and neither side attempted to argue it in their briefs on appeal. Thus, as near as we can tell, both sides appear to believe that the two charges rise or fall together. While it is true that we have the discretion to affirm "on any legal ground or theory apparent on the record," *see Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (quotation simplified), we decline to exercise that discretion here. Neither party has briefed for us the legal implications of treating the charges separately. And as a factual matter, Friend reported that Begay did more than just "have sex" with Laura: Friend stated that Begay had done "the same things" to Laura that he had done to her, and she described digital penetration as well as sexual intercourse. We therefore do not discuss this issue further.

curiam), *cert. denied*, 406 P.3d 253 (Utah 2017); *State v. Toombs*, 2016 UT App 188, ¶¶ 17–24, 380 P.3d 390, *cert. denied*, 390 P.3d 724 (Utah 2017). But these cases are all materially distinguishable from this one. In both *McCamey* and *Toombs*, the reports were vague and did not contain specific allegations of criminal activity. *See McCamey*, 2017 UT App 97, ¶ 2 (recounting how a probation officer told police that the defendant "was living in the home with the children" and would "sometimes pick [his daughter] up from school," in violation of the terms of his probation, which forbade him from having any contact with children); *Toombs*, 2016 UT App 188, ¶ 4 (stating that a neighbor, concerned that the defendant had molested a child, told police that she "had heard" that the defendant had "bathed" his sons and another child and gotten them "ready for bed"). And in *Green*, there was not actually any formal "report" of criminal activity, just a telephone call from "a news reporter" asking a county attorney for comment on Green's "polygamous lifestyle," as well as a later-discovered hodgepodge of information in the possession of various state agencies that, when considered together, pointed toward criminal activity. *See Green*, 2005 UT 9, ¶¶ 3, 24. In this case, by contrast, Friend gave a direct report to Officer in which she intended to notify Officer that a crime had been committed, and that report included sufficient information bearing on the elements of a crime to place Officer on notice that Begay had committed a crime. *See id.* ¶ 46.

¶30 Nor is our conclusion here at odds with the public policies identified by our supreme court in *Green. See id.* ¶ 45 ("[T]he statutory evolution of limitations on actions for sexual offenses against a child manifests a consistent commitment to a public policy which assigns paramount importance to the heinous nature of child sexual offenses and, owing in large part to the vulnerability of the victim, the difficulty in achieving prompt detection of the offense and prosecution of the perpetrator."). In this case, Officer received enough information from Friend to conclude that Begay had committed sex crimes against Laura; this

case therefore did not involve any "difficulty in achieving prompt detection of the offense." *See id.* Law enforcement agencies could easily have taken action in 1998 to, if appropriate, eventually charge Begay with crimes against Laura, just as they did regarding crimes against Friend.

¶31 Finally, we acknowledge that our decision in this case will likely feel unsatisfying to Laura. As a thirteen-year-old girl, she was apparently—by Begay's own later admission—the victim of sex crimes, and local law enforcement officers knew about those crimes in January 1998. Had those crimes occurred just a few years later, they could—under current Utah Supreme Court precedent—lawfully be prosecuted now pursuant to the 2008 statutory change. *See supra* note 2. But the outcome of this case is controlled by the statute of limitations in effect in the late 1990s, and under that statute, the State's effort to prosecute Begay for these crimes in 2021 comes nearly two decades too late. Like our supreme court, we recognize that the "problems presented in a case like this one are heart-wrenching," and we too "have enormous sympathy for victims of child sex abuse." *See Mitchell v. Roberts*, 2020 UT 34, ¶ 52, 469 P.3d 901. But we must apply the law as it is written, and in this case that law compels dismissal of the current charges against Begay.

CONCLUSION

¶32 The statute of limitations applicable to the charges in this case started to run in January 1998, when Friend reported to Officer that Begay had been "having sex" with Laura. Friend's report was made with the intent of notifying Officer that a crime had been committed, and it contained sufficient information to put police on notice that Begay had engaged in criminal sexual activity with regard to Laura. Because the statute of limitations expired in 2002, before both the 2008 statutory amendments and the 2021 filing of these charges, the State may not now prosecute

Begay for these crimes. We therefore reverse the district court's denial of Begay's motion to dismiss, and we remand this case with instructions to dismiss the charges.

––––––––––